684 A.2d 137

**Ronald B. MERRIWEATHER, Appellant,**

v.

**PHILADELPHIA NEWSPAPERS, INC., Jay Harris, Paul Maryniak and Joanne Sills, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 29, 1996.

Filed Sept. 11, 1996.

Reargument Denied Nov. 22, 1996.

Geoffrey R. Johnson, Philadelphia, for appellant.

Vernon L. Francis, Philadelphia, for appellees.

Before CAVANAUGH, HUDOCK and JAMIESON, JJ.

HUDOCK, Judge:

In his second appeal to this Court, Ronald B. Merriweather (Appellant) appeals from the order of the trial court granting summary judgment in favor of Philadelphia Newspapers, Inc., Jay Harris, Paul Maryniak, and Joanne Sills (Appellees). We reverse.

The underlying facts as stated in the earlier appeal are as follows:

Appellant, the Honorable Ronald Merriweather of the Municipal Court of Philadelphia, instituted this action for defamation against [Appellees] after the newspaper published an article concerning corruption in the Court of Common Pleas of Philadelphia County. The article, entitled "Feds: Court Reporter's Pot Trial Fixed," reported a federal court indictment against several individuals, including Philadelphia Court of Common Pleas Judge Kenneth Harris. The indict-

ment alleged that Judge Harris fixed the trial of court reporter Loretta Massey, who was charged with possession of illicit drugs. The article referred to [Appellant] as the judge who was assigned to preside over Massey's trial. Although the article stated that [Appellant] was not accused of any wrongdoing, he alleges that the caption of the article depicting the trial as fixed, along with mention in the article of [his] identity as the trial judge, suggests that he was instrumental in fixing the trial.

*Merriweather v. Philadelphia Newspaper,* 426 Pa.Super. 647, 620 A.2d 1242 (1992), *appeal dismissed,* 538 Pa. 482, 649 A.2d 434 (1994), mem. op. at pp. 1–2.[1]

The article at issue reads as follows:

### Feds: Court Reporter's Pot Trial Fixed

There was never a question that Common Pleas Court reporter Loretta Massey carried a box of marijuana and hashish through U.S. customs at Greater Philadelphia International Airport last year. There was doubt only over whether she knew what she was doing.

But a federal grand jury indictment yesterday charged that Common Pleas Judge Kenneth Harris—in apparently taped conversations—suggested that a fix, not a doubt, would be behind her acquittal on drug charges by Municipal Judge Ronald A. Merriweather.

A court reporter for Harris since 1982 who was reinstated to her $34,538–a–year job a week after her acquittal Oct. 16[,] Massey stands out among the 14 Philadelphia criminal defendants whose cases led to Harris' indictment on extortion and racketeering charges. Her lawyer, Romaine Phillips also was indicted.

The other 13 cases involved everyday street crimes—two shoplifting cases, two muggings, a $25 burglary and drug cases involving no more than a few hundred dollars worth of contraband.

---

1. In this appeal, Zachary Stalberg and Toni Locy were also named as defendants. They are no longer parties to the case.

Unlike the 13 other defendants, many of them too poor to afford private counsel, Massey appeared at trial with politicians and lawyers who attested to her good character.

Their testimonials, together with her theory that drugs may have been slipped into the box, prompted Merriweather to acquit her, the trial transcript shows.

The grand jury yesterday said that five months before her trial, Harris "told an attorney in the anteroom/robing room of [his] courtroom" that Loretta Massey had called him and asked if her case "was fixed yet."

Last Sept. 9 Phillips allegedly paid Harris $50 and discussed the need to postpone Massey's case. The next day Harris allegedly got it postponed.

Neither Judge Merriweather or Massey is accused of any wrongdoing.

Messages requesting comment that were left at Merriweather's office and at Massey's Germantown home were not answered.

Massey was arrested April 11, 1986, when customs officers found nearly a pound of hash and pot at the bottom of one of three cardboard boxes she brought back [on] her flight.

Massey testified she had met a man, identified only as Mr. Campbell, in a Montego Bay motel at the request of unidentified friends from an imported [sic] jewelry shop near her home.

Saying she went to Jamaica—her fourth trip in two years—to help organize a reggae music concert, Massey testified that she never saw the drugs, theorizing that Campbell slipped them into one of the boxes.

She also said she had planned to mail the packages, but that the "hassles" prompted her to take them with her.

Merriweather objected when Assistant District Attorney Richard Barrett started asking about her reggae concert. "She wants to make money," the judge said. "That's why she set up the concert. I want to, too."

Later, Barrett argued that Massey was one of many smugglers who think they can beat customs inspections. But Merriweather disagreed.

Stating that he was basing his acquittal partly on testimonials by state Rep. David P. Richardson, a Democratic committeeman identified only as Mr. Dubarry and three lawyers, Merriweather said "my everyday common sense" told him Massey wouldn't try to sneak drugs past inspectors.

The judge said reasonable doubt existed in the case. "I got to guess. I got to guess," he said.

"There is no testimony it smelled. I don't know. I mean, how do you know? I mean, I got to guess, and I can't do that."

*Id.* mem. op. at pp. 2–4. Appellees then filed a motion for summary judgment arguing that the article was written within the fair scope of the indictment and therefore could not be deemed defamatory. The trial court agreed and granted summary judgment in favor of Appellees.

On appeal, Appellant argued that the trial court erred in granting summary judgment by finding that, as a matter of law, Appellees did not abuse the qualified privilege to report on the federal indictment. A panel of this Court agreed. After discussing the pertinent law involving the qualified privilege accorded out-of-court statements regarding judicial proceedings, the panel concluded that, while the trial court determines as a matter of law whether a published account is subject to the qualified privilege, it remains a question of fact for the jury to determine whether the privilege has been abused in all cases, except those where the court may decide this question as a matter of law if the facts are such that only one conclusion can reasonably be drawn. The panel then compared the federal indictment with the newspaper article and further concluded that the title of the article, when coupled with its text, implies that Appellant was instrumental in fixing Massey's trial. The panel thus concluded that, despite the factual accuracy of the article, "a reasonable person could conclude that the article implied that [Appellant]

had a role in fixing the Massey case. Although the article states that [Appellant] was accused of no wrongdoing, the article can be construed to imply that [Appellant] was involved in the conspiracy." *Id.* mem. op. at pp. 8–9 (footnote omitted).

The panel reversed the trial court's order and remanded the matter for further proceedings. Appellees filed a petition for *allocatur* with our Supreme Court. Although the petition was granted and the appeal was briefed and argued, the Supreme Court entered an order dismissing the appeal as having been improvidently granted.

On March 8, 1995, Appellees filed another motion for summary judgment, this time claiming that, as a matter of law, Appellant could not prove actual malice. After Appellant filed a response, the trial court heard arguments and, by the order dated August 18, 1995, granted Appellees' motion for summary judgment.

Appellant phrases the issue before us as follows:

1. Whether the trial court erred in granting summary judgment to [Appellees] on the issue of actual malice where [Appellees] published a false accusation that [Appellant], a judge, "fixed" the trial of a case, where there was absolutely no factual basis for the accusation in the only source materials admittedly relied upon by the [Appellee] author, where the source material actually contradicted the accusation and where [Appellant] was entitled to an adverse "missing witness" inference based on Appellees' failure to identify the writer of one of the defamatory statements?

Appellant's Brief at p. 3.

When determining if a trial court properly entered summary judgment, this Court's scope of review is plenary. *Schriver v. Mazziotti*, 432 Pa.Super. 276, 278–79, 638 A.2d 224, 225 (1994), *appeal discontinued*, 539 Pa. 638, 650 A.2d 52. We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Id.* We will only reverse the trial court's decision if there was an abuse of discretion or error of law.

*Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 98–99, 644 A.2d 1251, 1254 (1994). An abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 447, 625 A.2d 1181, 1185 (1993) (*quoting* P.L.E. New Trial section 2).

■■■ Summary judgment is granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. *See generally* Pa.R.C.P. 1035.2, 42 Pa.C.S.A. The moving party has the burden of proving the non-existence of any genuine issue of fact. *Accu–Weather, Inc.,* 644 A.2d at 1254. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *Id.* The trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

The Supreme Court of Pennsylvania has recently explained the law regarding a defamation action brought by a public figure against media defendants as follows:

It is axiomatic that the United States Constitution dictates that certain limits be placed on "a State's power to award damages in a libel action brought by a public official against critics of his official conduct" in order to secure the freedom of speech guaranteed by the First Amendment. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 256, 84 S.Ct. 710, 713, 11 L.Ed.2d 686 (1964). Thus, it is the burden of a public figure plaintiff . . . to show that the statements at issue are false. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 775, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). The Court reasoned that although "requiring the plaintiff to show falsity will insulate from liability some

speech that is false, but unprovably so," this result was justifiable since placing the burden on the media to prove truth would create fear of liability and deter free speech. *Id.* at 777–778, 106 S.Ct. at 1563–65.

In addition to establishing that the statement was false, the public figure plaintiff must also establish that the defendant published the statement with "actual malice," or in other words, published the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279–280, 84 S.Ct. at 726.

*Ertel v. The Patriot–News Company*, 544 Pa. 93, 99, 674 A.2d 1038, 1041 (1996).

In essence, Appellant alleges that Appellees published the article with the knowledge that the defamatory meanings conveyed in the article were false or were made with reckless disregard for the truth. Appellees claimed and the trial court agreed that Appellant failed to establish that there existed an issue of material fact with regard to whether Appellees acted with actual malice. The trial court concluded that Appellant neither presented evidence that there was some purposeful action to promote and publish a false statement nor evidence that Appellees had serious doubts as to the falsity of the article prior to publication. Furthermore, the trial court concluded that the article is not materially different than the indictment and, at most, the headline may not have accurately reflected the substance of the article.

 For the following reasons, we find that Appellant has raised a genuine issue of material fact, sufficient to survive Appellees' motion for summary judgment. Appellant alleges that Appellees fabricated an accusation that he "fixed" the Massey trial, "(1) which accusation is neither in the criminal charge, (2) nor a reasonable interpretation of the criminal charge, (3) nor in any of the materials on which the newspaper defendants relied in writing the article, (4) but is instead contradicted by the source materials[.]" Appellant's Brief, at p. 10. To support these allegations, Appellant argues that the

inaccuracy of the headline, the implications of the headline and article together, as well as the Appellees' failure to identify the headline writer, raises a genuine issue of material fact as to whether Appellees published the article with actual malice. We agree.

First, we have already held that the article was not a fair and accurate report of the federal indictment:

[W]e find merit in [Appellant's] second argument that the title of the article, "Feds: Court Reporter's Pot Trial Fixed," coupled with the text of the article implies that he was instrumental in fixing Massey's trial. At this point, it is important to compare the federal indictment against Judge Harris with the article written by the Daily News. The indictment alleges that the federal defendants, including Judge Harris and attorney Romaine Phillips, unlawfully conspired to participate in the conduct and affairs of the Court of Common Pleas of Philadelphia County through multiple acts of bribery and extortion. Indictment, paragraphs 3, 4. The indictment then charged that the defendants carried out the conspiracy by seeking to influence the outcome of judicial proceedings. This was accomplished through various means, including the steering of cases involving criminal defendants to certain attorneys and judges in the court system to obtain favorable results. Indictment, paragraphs 5, 6. It was further alleged that the defendants acted overtly by seeking to fix the case of *Commonwealth v. Massey*, M.C. 8604–0570. Indictment, paragraph 38. The overt act purportedly occurred when Judge Harris told an attorney that Massey inquired as to whether the case "was fixed yet," and when attorney Romaine Phillips discussed the need for a continuance in Massey's case, which Harris granted. Indictment, paragraphs 39–41.

The indictment never mentioned [Appellant]. The article, however, did mention [Appellant's] handling of Massey's case. Specifically, the title of the article indicates that the federal authorities alleged that Massey's trial was fixed. Moreover, the article states that "Judge Kenneth Harris—

in apparently taped conversations—suggested that a fix, not a doubt, would be behind her acquittal on drug charges by [Appellant]." Thus, the article focuses on the outcome of the trial, as well as the actions of the federal defendants. By suggesting that the trial and the acquittal, matters which were under the sole control of [Appellant], were fixed, we find that the article can reasonably be interpreted to implicate [Appellant] in the federal conspiracy. Thus, we find that a reasonable person could conclude that the article implied that [Appellant] had a role in fixing the Massey case. Although the article states that [Appellant] was accused of no wrongdoing, the article can be construed to imply that [Appellant] was involved in the conspiracy.

*Merriweather v. Philadelphia Newspaper, supra,* slip op. at pp. 7–9 (footnote omitted). Although we limited our review to whether the article was a fair and accurate report of the federal indictment, in the present appeal we find that our previous analysis of the evidence would also support a factfinder's determination that Appellees published the article with actual malice. It is clear that the headline and content of the article when coupled together do not reflect the contents of the federal indictment upon which it was based. Now we must decide whether Appellant has alleged sufficient facts to raise a material issue regarding whether Appellees published the article with knowledge of or reckless disregard for the truth. In this regard, we find that the implications of Appellant's involvement in the federal conspiracy are obvious, and their lack of any basis within the actual federal indictment are equally obvious. Although the article expressly relates a single line to the effect that Appellant was not accused of any wrongdoing, we find that this does not negate the implication of involvement which permeated the article.

Next, we also find that Appellees' failure to identify the headline writer of the article may be considered and should have been considered by the trial court in ruling on Appellees' motion for summary judgment. In ruling on a motion for summary judgment, the trial court must examine the record in a light most favorable to the non-moving party and give the

non-moving party the benefit of all inferences derived therefrom. *Schriver, supra.* We find that Appellant has properly alleged that the headline writer and reviewer were not identified and were witnesses within the exclusive control of Appellees. Accordingly, for summary judgment purposes, this allegation must be afforded the inference that these persons are missing witnesses and that their testimony would be adverse to Appellees. *Fitzpatrick v. Philadelphia Newspapers, Inc.,* 389 Pa.Super. 438, 443–45, 567 A.2d 684, 687 (1989), *alloc. den.,* 525 Pa. 618, 577 A.2d 890 (1990) ("It is indeed settled law that a party's failure to testify at a civil trial raises an inference of fact that the party's testimony would have been adverse or unfavorable to him.").

Appellees disclaim any ability to determine the identity of the writer of the headline in question. In fact, counsel for the Appellees asserts in their brief before this Court that "... PNI [Philadelphia Newspapers, Inc.] does not know who wrote the headline ..." Appellees' Brief at p. 36 n. 11. The truth of that assertion cannot be determined in a summary judgment motion. We leave it to the trial court at the time of trial to determine whether the evidence adduced supports Appellees' claim of impossibility of identification and, if so, whether no inference should be drawn, or whether it does not support their claim, in which case an adverse influence may be drawn by the jury pursuant to proper instructions.

The trial court and Appellees rely on *Hertz Corp. v. Hardy,* 197 Pa.Super. 466, 178 A.2d 833 (1962), as authority that the trial court may never afford the missing witness inference as a matter of law. *Hertz* was an appeal from a jury verdict, and we simply held that a trial court during trial may not, as a matter of law, draw an adverse inference from a party's failure to present evidence. *Id.* at 472–73, 178 A.2d at 837. Rather, the court opined that the failure to call witnesses without adequate explanation may allow the jury to draw the adverse inference under a proper charge.

We thus conclude that for purposes of summary judgment, the inference must be accorded to the Appellant; whether it is accorded at trial remains to be seen.

We note that Appellees also argue that such an adverse inference, if allowable, is insufficient by itself to establish the required burden of proof, relying on *Fitzpatrick, supra.* However, we again find Appellees' argument misplaced. Appellant does not assert the adverse inference as his only evidence of actual malice, rather, he asserts it in conjunction with the obvious disparity between the article, including its headline, and the federal indictment.

The trial court and Appellees also rely on *Time, Inc. v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971), as authority for their argument that, "if a publication is a rational interpretation of the source document, then a misconception found in the publication is not sufficient to create a jury issue of malice under the *New York Times* standard." Trial Court Opinion, 8/18/95, at p. 9. However, we find that *Time* is not on point. As explained above, we have already found that the article was not a rational interpretation of the federal indictment.

Thus, we conclude that the obvious inconsistencies between the federal indictment and the article, and the adverse inference which is allowable for failing to identify the headline writer, constitute sufficient evidence to produce and maintain an issue of material fact regarding actual malice to survive a summary judgment motion.

Order reversed. Case remanded. Jurisdiction relinquished.

JAMIESON, J., did not participate in the consideration or decision of this matter.