**Frisbie v. Wiseman**

C.P. of Bradford County, no. 00CV000159.

*John Kocsis,* for plaintiffs.
*David W. Saba* and *Shawn P. Phillips,* for defendant Smith.
*David R. Bahl,* for defendant Wiseman.
*Mark T. Perry,* for defendant clinic.

MOTT, *J.,* October 26, 2001—Nancy Frisbie and Grant Frisbie, her husband, the plaintiffs, began this action by filing a praecipe for writ of summons on April 25, 2000. In their complaint, filed on July 24, 2000, they make various allegations against Barbara Wiseman M.D.,

Anna Mae Smith, physician assistant, and the Guthrie Clinic Ltd., the defendants. The complaint contains the following averments: On March 21, 1996, Anna Mae Smith conducted a gynecological examination of Nancy Frisbie at the Guthrie Clinic. During that examination Anna Mae Smith noted irritation and ulcerations in the vulva area. On July 16, 1996, Nancy Frisbie returned to the Guthrie Clinic and complained of vaginal irritation in the same area noted during her March 21 visit. During that second examination Anna Mae Smith told Nancy Frisbie that she had genital herpes, and Barbara Wiseman prescribed medication intended to treat genital herpes. On March 31, 1997, and, on April 24, 1998, Anna Mae Smith informed Nancy Frisbie that she still had genital herpes, and Barbara Wiseman again prescribed medication. Then, on June 17, 1999, Nancy Frisbie was examined by Carla Cohen, physician assistant, who arranged a referral for a biopsy of the ulceration of the vulva. The biopsy revealed that a cell carcinoma was located in the vulva area. Next, on June 30, 1999, S. Bryan Rouse M.D., diagnosed Nancy Frisbie as having a vulvar carcinoma. Nancy Frisbie underwent surgery on July 20, 1999, to remove the cancerous tissue. Thereafter, Nancy Frisbie underwent a course of postoperative radiation therapy treatment to control the tumor.

Count I of the complaint sets forth a cause of action sounding in negligence against Barbara Wiseman; Count II sounds in negligence against Anna Mae Smith; Count III asserts a claim against the Guthrie Clinic based upon the alleged negligence of Barbara Wiseman and Anna Mae Smith, as employees of the clinic; and Count IV asserts a loss of consortium claim against all the defen-

dants on behalf of Grant Frisbie, Nancy Frisbie's husband. After the pleadings were closed and the discovery phase completed, motions for summary judgment were filed separately by each defendant.[1] The aforesaid motions are now before the court for disposition, and we will consider the motions seriatim.

## MOTION FOR SUMMARY JUDGMENT FILED BY BARBARA WISEMAN M.D.

Barbara Wiseman contends that the plaintiffs' claims are time barred[2] because Nancy Frisbie did not believe that the diagnosis of genital herpes was correct, and because she acknowledged that she could have sought a second opinion. We disagree. The evidence contained in the record raises a genuine issue of material fact concerning whether Nancy Frisbie could have reasonably relied upon the diagnosis of Anna Mae Smith. Also, the evidence does not make it clear and free from doubt that Nancy Frisbie had knowledge of the existence of the cancer prior to June 30, 1999.[3]

---

1. A party may move for summary judgment after the relevant pleadings are closed, if, after the completion of discovery relevant to the motions, the party who bears the burden of proof at trial has failed to produce evidence essential to submit the case to a jury at trial. Pa.R.C.P. 1035.2. Our standard in determining whether to grant such a motion is well settled. We must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 471, 684 A.2d 137, 140 (1996). Summary judgment can only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

2. 42 Pa.C.S. §5524(2) provides that a medical malpractice action for personal injury must be commenced within two years.

3. The "discovery rule" is a doctrine which provides that where the existence of an injury is not known to the complaining party and such

The record contains ample evidence which suggests that Nancy Frisbie was justified in relying upon the diagnosis of Anna Mae Smith. Nancy Frisbie, when asked whether she had sexual relations with anyone prior to meeting her husband, testified that, "I have been with him for a long time, since we've been about 15, 16 years old. There probably was a few boyfriends in between there." (Deposition of Nancy Frisbie, 3/26/01, pp. 17, 18.) She also stated, "I had had sexual relations with other men prior to my marriage to Grant." (Affidavit of Nancy Frisbie, plaintiffs' exhibit H.) Furthermore, Grant Frisbie acknowledged that he also was sexually active prior to their marriage. (Affidavit of Grant Frisbie, plaintiffs' exhibit I.) Anna Mae Smith told Nancy Frisbie that genital herpes can lay dormant for years. (Deposition of Nancy Frisbie, 3/26/01, p. 17; affidavit of Nancy Frisbie, plaintiffs' exhibit H.) Thus, it appears that Nancy Frisbie could reasonably have believed that it was possible for her to have contracted genital herpes. Skepticism on the part of Nancy Frisbie, as to the correctness of the diagnosis indicating the existence of genital herpes, does not constitute knowledge of the existence of the cancer.

Moreover, Anna Mae Smith forwarded letters to Nancy Frisbie which stated, "I am sure that you do have the viral infection [genital herpes] that we spoke about at the time of your appointment," and "I am sure that the virus [genital herpes] we discussed at the time of your appointment is present." (Plaintiffs' exhibit G.) Nancy

knowledge could not reasonably be ascertained within the prescribed period, the period of limitations does not begin to run until discovery of the injury is reasonably possible. *Bradley v. Ragheb,* 429 Pa. Super. 616, 633 A.2d 192 (1993).

Frisbie, a layperson, should not be charged with greater knowledge of her physical condition than that possessed by the medical personnel on whose advice she relied. *Bohus v. Beloff,* 950 F.2d 919, 929 (1991). "To put upon a patient the duty of knowing the nature of her ailment and its relation to her prior treatment before it is ascertained with a degree of certainty by the medical profession is a great burden to impose upon her." *Id.* at 930.

Likewise, we are unpersuaded by Barbara Wiseman's argument that the plaintiffs should have sought a second opinion. The plaintiffs argue that Nancy Frisbie relied upon a diagnosis formed by a physician assistant and verified by a medical doctor, that genital herpes is not a life threatening disease, and that, therefore, nothing prompted them to seek a second opinion. Lastly, the evidence does not demonstrate, as Barbara Wiseman asserts, that Nancy Frisbie acknowledged that she could have sought a second opinion. Rather, the evidence demonstrates that she simply acknowledged that she was able to make an appointment with "the doctor," referring to Barbara Wiseman. (Deposition of Nancy Frisbie, 3/26/01, p. 19.) Nancy Frisbie also stated:

"I did not ask for any second opinions or to be seen by Dr. Wiseman because I thought Anna Mae Smith was discussing my case with her. Dr. Wiseman wrote some of my prescriptions for the herpes medicine. I trusted Anna Mae Smith and Dr. Wiseman and the explanation given to me. I took the medicines that they prescribed for me and tried to give it time to work. I was sent letters confirming the herpes after the lab tests were completed." (Affidavit of Nancy Frisbie, plaintiffs' exhibit H.)

Considering that Nancy Frisbie has only a tenth grade education, and based on the foregoing, we determine that a genuine issue exists regarding whether it was reasonable for Nancy Frisbie to have trusted Anna Mae Smith's professional judgment, and to have relied upon her diagnosis. Also, because Barbara Wiseman signed the prescriptions and initialed the clinic reports, a question lingers concerning whether it was reasonable for Nancy Frisbie to have believed that Barbara Wiseman was supervising her treatment. In that Nancy Frisbie continued to take the prescribed medication, presumably in hopes of managing a malady that had been diagnosed as genital herpes, the evidence supports an inference that she relied upon the diagnosis.

In sum, it is not reasonable to have expected Nancy Frisbie to have been aware of the presence of the cancer before June 30, 1999. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992). Viewing the evidence in a light most favorable to the non-moving party, we conclude that the plaintiffs did not know of the existence of the cancer until June 30, 1999, and that they then timely initiated this action on April 25, 2000. Barbara Wiseman has failed to meet her burden, as the moving party, of proving that Nancy Frisbie was aware of the cancer prior to June 30, 1999, and as a result, she is not entitled to judgment on this issue as a matter of law.

Next, we determine that the evidence contained in the record demonstrates that a genuine issue of material fact exists concerning whether Barbara Wiseman owed a duty of care to the plaintiffs, and hence, she is not entitled to judgment as a matter of law on this issue either. Anna

Mae Smith stated that Barbara Wiseman acted as her "supervising physician." (Deposition of Anna Mae Smith, 12/20/00, pp. 46, 47.) She also testified that Barbara Wiseman was her "covering physician," and that Barbara Wiseman served as her "primary doctor" in 1996, 1997 and 1998. (Deposition of Anna Mae Smith, 12/20/00, p. 10.) Anna Mae Smith additionally stated that "she's [Barbara Wiseman is] my supervising physician and she co-signed my notes." (Deposition of Anna Mae Smith, 12/20/00, p. 16.) She stated, concerning the scope of Barbara Wiseman's supervision, "[a]s a supervising physician, she was available if there was anything I had questions on." (Deposition of Anna Mae Smith, 12/20/00, p. 17.) Anna Mae Smith testified that Barbara Wiseman was her "primary doc" when she applied to the Board of Medicine for certification as a physician assistant, pursuant to 49 Pa. Code §18.141. (Deposition of Anna Mae Smith, 12/20/00, p. 10.) Furthermore, the evidence shows that Barbara Wiseman signed the prescriptions and initialed the clinic reports. Thus, a genuine issue of material fact exists as to whether she functioned as Anna Mae Smith's supervising physician concerning the care of Nancy Frisbie. (Plaintiffs' exhibit E and F; deposition of Anna Mae Smith, 12/20/00, pp. 22, 23, 27, 49, 50; deposition of Barbara Wiseman, 12/20/00, pp. 10-13, 18.) Barbara Wiseman acknowledged that she, as well as other medical doctors, supervised Anna Mae Smith at all times relevant to this matter. (Deposition of Barbara Wiseman, 12/20/00, pp. 8, 21, 22.) In addition, Arnold Bank M.D., testified that Barbara Wiseman "failed to take notice of this patient and exercise her obligation to supervise and

check Ms. Smith which she certainly breached four times with this patient." (Report of Arnold Bank M.D.)

In addition, Barbara Wiseman submitted an application, signed by her on March 21, 1997, to the Pennsylvania State Board of Medicine, for physician assistant supervisor status relative to Anna Mae Smith.[4] The application was received by that board on April 1, 1997. The verification statement included as part of that application states, in pertinent part:

"I will direct and exercise supervision over the named physician assistant with the rules and regulations of the State Board of Medicine. I recognize that I retain full professional and legal responsibility for the performance of the physician assistant and the care and treatment of the physician assistant's patients. . . .

"The physician assistant [Anna Mae Smith] identified in this application will only assist the primary physician assistant supervisor [Barbara Wiseman] and substitute physician assistant supervisor(s) listed in this application. This physician assistant will only provide medical services to the patients under the care of the primary and substitute supervisor(s) named in this application."

While there is no evidence contained in the record which would demonstrate that Barbara Wiseman was approved as a physician assistant supervisor by the Board of Medicine, the fact that she submitted the aforesaid

---

4. 49 Pa. Code §18.144 provides, in pertinent part:

"A primary physician assistant supervisor shall assume the following responsibilities. The supervisor shall: . . .

"(7) Accept full professional and legal responsibility for the performance of the physician assistant and the care and treatment of his patients."

application, coupled with the evidence of her conduct discussed above, raises a question as to whether Barbara Wiseman owed a duty of care to the plaintiffs because she served as Anna Mae Smith's supervising physician. In sum, Barbara Wiseman has failed to demonstrate that it is clear and free from doubt that she did not owe a duty of care to the plaintiffs. Thus, this issue is best preserved for trial.

## MOTION FOR SUMMARY JUDGMENT FILED BY ANNA MAE SMITH

Anna Mae Smith asserts that the complaint is time barred. In that her assertions are nearly identical to the assertions made by Barbara Wiseman upon this issue, we rely upon the above discussion, and we will deny the motion. We add only that Anna Mae Smith is incorrect in stating that the discovery rule was waived by the plaintiffs' failure to assert the rule in the complaint or in their reply to new matter. The plaintiffs pleaded facts in their complaint sufficient to sustain application of the rule.[5]

---

5. Paragraphs 13-15 of the complaint provide:

"(13) On June 17, 1999, the plaintiff Nancy Frisbie presented to the Guthrie Clinic Ltd. for her yearly gynecological examination. The physical examination was performed by one Carla Cohen FAP, who immediately arranged a referral for a biopsy of the ulceration of the vulva.

"(14) On June 18, 1999, a biopsy of the vulva was performed and it was discovered that the plaintiff Nancy Frisbie had a moderately differentiated basaloid squamous cell carcinoma.

"(15) On June 30, 1999, after a complete and thorough physical examination and after review of the biopsy results, S. Bryan Rouse M.D., a member of the Obstetrics-Gynecological Department of the Guthrie Clinic Ltd. diagnosed the plaintiff Nancy Frisbie as having a large vulvar carcinoma, involving both sides of the vulva approaching but not entering the vagina."

*Prevish v. Northwest Medical Center,* 692 A.2d 192, 197 (Pa. Super. 1997).

## MOTION FOR SUMMARY JUDGMENT FILED BY THE GUTHRIE CLINIC LTD.

The Guthrie Clinic also asserts that the complaint is time barred. Here again, we rely upon our discussion above, and we will deny the motion. However, in their complaint the plaintiffs allege that at all times relevant Barbara Wiseman and Anna Mae Smith "were the agents, servants or employees of the Guthrie Clinic Ltd. engaged in the ordinary course and scope of their duties." Those allegations sound in vicarious liability, and the evidence raises a genuine question as to whether the Guthrie Clinic is liable under the doctrine of respondeat superior for the allegedly negligent conduct of the other defendants. Thus, we will allow the vicarious liability cause of action to proceed. It is the only claim against the Guthrie Clinic adequately pleaded in the complaint, and the clinic is not entitled to judgment on that claim.

However, the plaintiffs now argue that the complaint also asserts against the clinic a claim sounding in corporate negligence. Such a claim is not adequately pleaded in the complaint, and such a claim is not applicable to the Guthrie Clinic anyway. "Corporate negligence is a doctrine under which [a defendant] is liable if it fails to uphold the proper standard of care [it owes to] the patient . . . . This theory of liability creates a nondelegable duty which the [defendant] owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party. . . ." *Thompson*

*v. Nason Hospital,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). (footnote omitted) Hospitals and health maintenance organizations are the only medical providers that have been held to be subject to such a claim in Pennsylvania, because they provide for the total health care of their patients. *Thompson v. Nason Hospital, supra; Shannon v. McNulty,* 718 A.2d 828 (Pa. Super. 1998). We have specifically held that corporate negligence is not applicable to physician practice groups, which is what the Guthrie Clinic is. *Johnson v. Wiseman,* 3 Brad. Cty. L.J. 95, 98 (1998). We further said that: "the Guthrie Clinic is not a comprehensive health center coordinating the total care of patients. Nor does it appear that it is an entity, separate from its physician members, that controls a patient's total medical care." *Id.*

Therefore, the motion for summary judgment filed by the Guthrie Clinic will be granted on any claim of corporate negligence being asserted against it in this matter.

Accordingly, we enter the following:

### ORDER

And now, October 26, 2001, in accord with the memorandum opinion filed this date, the motions for summary judgment filed by the defendants, Barbara Wiseman M.D. and Anna Mae Smith are denied. The motion for summary judgment filed by the defendant, Guthrie Clinic Ltd., is granted in part and denied in part. It is granted on any claim of corporate negligence being asserted. It is denied in all other respects.