J-A16037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SARM 2006-4 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MCCLAIN AND MITCHELL PRINCE | |
| Appellants | No. 3062 EDA 2014 |

Appeal from the Order Entered October 3, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2009-07709

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED OCTOBER 16, 2015**

John McClain and Mitchell Prince (Defendants) appeal from the trial court's order, entered in the Court of Common Pleas of Montgomery County, granting Appellee US Bank National Association's (US Bank) motion for reconsideration, entering summary judgment[1] on all claims in favor of US

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Our standard of review in cases of summary judgment is well settled.  This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law.  ***Merriweather v. Philadelphia Newspapers, Inc.***, 684 A.2d 137, 140 (Pa. Super. 1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Pa.R.C.P. 1035.2.  In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-
*(Footnote Continued Next Page)*

Bank and against Defendants' counterclaims, reforming a 2005 mortgage in this consolidated reformation/mortgage foreclosure action, and entering *in rem* judgment in the amount of $1,031,639.72, plus interest, against Defendants. After careful review, we affirm.

In 2005, Defendants purchased the subject property, located at 624 Montgomery School Lane, Wynnewood, Lower Merion Township, Montgomery County (property), from Michael and Theresa Power (the Powers) for $1.1 million.[2] At the time the Powers purchased the property in 2001, a deed, registered with Lower Merion Township and recorded in Montgomery County, included a legal description of the property as two adjoining parcels, "Lot A" (100 ft. by 205 ft.) and "Lot B" (50 ft. by 205 ft.). Lot A has a house and pool on it and Lot B is vacant. In 2002, the Powers consolidated the lots into a single lot by deed in order to obtain a swimming pool permit. The 2002 deed (deed of consolidation) was also registered and recorded, and contained a proper metes and bounds description of the entire property. The property was assigned a single tax parcel number and is known by the single address of 624 Montgomery School Lane. When Defendants purchased the property from the Powers, the agreement of sale

*(Footnote Continued)* _____

moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

[2] The Powers purchased the property and acquired title to the property from the Estate of Rush Donwell Touton, Jr., by deed dated November 15, 2001.

described the property simply by address and tax parcel number. However, the 2005 deed conveying the property to the Defendants, which was prepared by a title agent, contained an error in the legal description of the property -- the deed only included the metes and bounds description of Lot B and completely omitted the metes and bounds description of Lot A. Defendants borrowed $825,000 from Wells Fargo to buy the property. The legal description of the property in the Wells Fargo mortgage contains the same error as the 2005 deed, it identifies the correct address and tax parcel number, but it contains a metes and bounds description of only Lot B. The Wells Fargo loan application issued to the Defendants for the property certifies that the Defendants will utilize the property as their primary residence.

In 2006, Wells Fargo, the original mortgagor of Defendants' loan, transferred all rights, title, and interest in the loan to US Bank. As a result of that transaction, Wells Fargo became the servicer of the loan and US Bank the trustee, holding an interest in the mortgage loan for the benefit of investors.[3] Defendants failed to make their monthly mortgage payments.

_____

[3] Many mortgage lenders securitize their outstanding mortgages through the sale of Mortgage Backed Securities (MBS) in the capital markets. *See* https://www.usbank.com/pdf/.../Role-of-Trustee-Sept2013. Parties involved in a MBS transaction include the borrower, the originator, the servicer and the trustee, each with their own distinct roles, responsibilities and limitations. *Id.* MBS's are financial instruments which represent an ownership in a group of mortgage loans, commonly referred to as pools, and their corresponding cash flows. *Id.* Mortgage loans are purchased from
*(Footnote Continued Next Page)*

Defendants have been in default for 7 years.  In March 2009, US Bank[4] filed the underlying mortgage foreclosure action (foreclosure action) against Defendants.  During the pendency of the action, US Bank discovered the errors in the legal description in the 2005 deed and mortgage.  As a result, US Bank filed a quiet title action in June 2010 against Defendants seeking to:  (1) reform the mortgage to include the residential lot and (2) declare that it held a "valid first position mortgage" against the residential lot even though the subsequent Wells Fargo home equity loans were actually recorded first in time against the residential lot.  In response, on July 14, 2010, the Powers corrected the error in the 2005 deed's legal description by executing a new deed ("deed of correction") that contained a corrected metes and bounds description of the entire property, both Lots A and B.

In August 2011, Defendants filed a lawsuit ("reformation action") in Delaware County[5] against the Powers to compel reformation of the 2005

*(Footnote Continued)* ——————

banks, mortgage companies, and other originators and then assembled into pools by a governmental, quasi-governmental, or private entity and then deposited into trusts which issue securities entitling the investors to all principal and interest payments made by borrowers on the loans in the pool. ***Id.***

[4] According to Defendant McClain, Wells Fargo instituted the first foreclosure action on the property in January 2009.  Subsequently, and for purposes of this appeal, US Bank instituted the current foreclosure action in March 2009. N.T. Judge Green Trial, 2/12/13, at 219.

[5] The Powers resided in Delaware County at the time the reformation action was filed.

deed to include separate legal descriptions for Lots A and B, as well as to have them convey the property to Defendants as joint tenants with the right of survivorship.[6] After a non-jury trial, the Honorable G. Michael Green presiding (Judge Green Trial), the trial court determined that the Powers must record a new deed describing the land as a single consolidated parcel in conformance with the 2002 deed of consolidation. The Powers complied with the order and a new deed was recorded in 2013. The 2013 deed describes the entire property and also lists Defendants as joint tenants with the right of survivorship. This determination was appealed and our Court affirmed the trial court's order. See **McClain v. Power**, No. 1933 EDA 2013 (filed September 18, 2014) (Pa. Super. 2014).

US Bank filed a motion for summary judgment; oral argument was held on the motion on May 2, 2013, before the Honorable Rhonda Lee Daniele. On January 15, 2014, the court denied US Bank's motion for summary judgment. US Bank and Defendants filed motions for reconsideration of the court's summary judgment order; the court granted US Bank's motion and denied Defendants' motion, after argument, on October 3, 2014. The court entered summary judgment in favor of US Bank and against Defendants on their counterclaims. The court specifically ordered that:

---

[6] On September 9, 2011, the trial court ordered that the foreclosure action (No. 09-07709) and reformation action (No. 10-15604) be consolidated.

- the legal description attached to the mortgage be reformed to include the metes and bounds of the entire property (both lots);

- the declared mortgage constitutes a valid, first-position mortgage lien against the entire property; and

- in rem judgment be entered in foreclosure in the amount of $1,031,639.72.

Trial Court Order, 10/3/14, at 1-2. The trial court concluded, on reconsideration, that collateral estoppel applied to the case where: (1) Defendants believed that the property consisted of a single lot at the time of purchase; (2) the reformation action was decided on the merits; (3) Defendants were a party to that reformation action before Judge Green; and (4) Defendants had a full and fair opportunity to litigate the issue of whether the mortgage applied to both lots in the action before Judge Green. Trial Court Opinion, 10/3/14, at 4.[7] Moreover, the trial court found that because Defendants admitted they are in default, summary judgment was properly granted in favor of US Bank in the foreclosure action. Defendants now appeal the October 3, 2014 order granting reconsideration and entering judgment in favor of US Bank and against Defendants. On appeal, Defendants raise the following issues for our consideration:

> 1. Was summary judgment properly granted in either of the actions when none of the plaintiff's pleading or discovery contained a valid verification?

_____

[7] The trial court adopted the October 3, 2014 memorandum opinion in the event of an appeal. Thus, we have no separate Pa.R.A.P. 1925(a) opinion in the matter.

2. Was summary judgment properly granted when the facts reveal that US Bank has no standing to bring either action?

3. Was summary judgment properly granted in the Foreclosure Action when there was a genuine issue of material fact regarding the assignment of the mortgage and note to the plaintiff at the time the Plaintiff instigated its foreclosure action?

4. Was summary judgment properly granted in the Foreclosure Action when the plaintiff is not the named mortgagee and it failed to file an Assignment of Mortgage?

5. Was summary judgment properly granted in the Foreclosure Action enlarging the mortgage lien to include the additional 100x205' Residential Lot when the plaintiff never requested this relief in its pleadings?

6. Was summary judgment in the Foreclosure Action properly granted enlarging the mortgage lien to include the additional 100x205' Residential Lot when the plaintiff judicially admitted that the lien only encompassed the 50x205 Vacant Lot.

7. Did the court have jurisdiction to grant summary judgment in the Quiet Title Action when there was a failure to name all necessary and indispensable parties?

8. Was summary judgment in the Quiet Title Action properly granted when there was no credible evidence of a mutual mistake?

9. Was summary judgment in the Foreclosure Action properly granted when there was no credible evidence of the default?

10. Was summary judgment in the Quiet Title Action properly granted despite the fact that the Defendants' bankruptcies granted bona fide purchaser status to the Trustee in bankruptcy which, in turn, deprived the court to grant the equitable relief requested to the plaintiff?

11. Did the court properly apply the doctrine of collateral estoppel when the finding in the prior action was not essential to the outcome?

Defendants first claim that summary judgment was improperly entered in favor of US Bank where it never properly verified, swore or attested to

any pleadings or discovery. Instead, the Defendants claim that US Bank's attorneys or representatives from Wells Fargo, its servicing agent, submitted the verifications which are insufficient under the rules of civil procedure.

Pennsylvania Rule of Civil Procedure 1024, that governs the rules applicable to verification, states in pertinent part:

> (a) Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified. The signer need not aver the source of the information or expectation of ability to prove the averment or denial at the trial. A pleading may be verified upon personal knowledge as to a part and upon information and belief as to the remainder.
>
> . . .
>
> **(c) The verification shall be made by one or more of the parties filing the pleading unless all the parties** (1) lack sufficient knowledge or information, or **(2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient knowledge or information and belief and shall set forth the source of the person's information as to matters not stated upon his or her own knowledge and the reason why the verification is not made by a party.**

Pa.R.C.P. 1024 (emphasis added). Our Court has held that a complaint's verification "must not be transferred into an offensive weapon designed to strike down an otherwise valid petition". *Monroe Contract Corp. v. Harrison Square, Inc.*, 405 A.2d 954, 958 (Pa. Super. 1979). Moreover, before a court dismisses a pleading on the basis of a defective verification, it should first permit the party to amend. *Id.* However, where the failure to

comply with Rule 1024 results in an error of a *de minimus* technical nature that did not prejudice the substantive rights of the opposing party, it is not necessary to remand the case for amendment where it would serve no practical purpose. *Id.*

Defendants rely upon *J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258 (Pa. Super. 2013), to argue that Wells Fargo, as a mortgage servicer, is not the proper party to execute verifications in this case. In *Murray*, the underlying mortgage foreclosure action was filed by Deutsche Bank National Trust Company as trustee for Washington Mutual Mortgage Securities Corporation. JP Morgan Chase Bank was later substituted as plaintiff, as an agent of Deutsche Bank. When a vice president of JP Morgan signed the complaint's verification "on behalf of" JP Morgan, mortgagee-defendants argued that, as a representative of JP Morgan, she could only verify the complaint if she "certified satisfaction of the requirements of Rule 1024(c)." *Id.* at 1270. In finding the verification deficient, and remanding the case to permit amendment, our Court reiterated that any person, including an attorney for a party, could verify on behalf *of another party*, provided that the person does so "only in those cases in which the conditions delineated in Rule 1024 are present." *Id.* In *Murray*, the Court determined that the verification was not only deficient, but "no effort was made satisfy Rule 1024(c)." *Id.* at 1271.

Here, the mortgage foreclosure complaint was filed on March 18, 2009, solely in the name of US Bank National Association as Trustee for

SARM 2006-4.[8]  The verification to the complaint, made by US Bank's attorney,[9]  provides that because US Bank, as plaintiff, is outside the jurisdiction of the Court and/or the verification could not be obtained within the time allowed for the filing of the complaint, **US Bank's attorney is authorized** to make the verification pursuant to Pa.R.C.P. 1024(c), and that the statements made in the foreclosure action **are based upon information supplied by US Bank** and are true and correct to the best of his knowledge.  Complaint Verification, 3/20/05 (emphasis added).

Subsequently, on July 29, 2009, US Bank praecipied to reinstate the mortgage foreclosure complaint/action against Defendants.  Plaintiff's attorney filed a praecipe to substitute the verification to the complaint.  The

_____

[8] SARM is the acronym for a structured adjustable rate mortgage.

[9] Instantly, US Bank's original verification includes the requisite Rule 1024(c) language that explains why US Bank did not make the verification in its own stead.  **Cf. Atlantic Credit & Finance, Inc. v. Giuliana**, 829 A.3d 340 (Pa. 2003) (verification, signed by paralegal of plaintiff corporation, stating that s/he "reviewed the averments of the attached pleading [and] verifie[d] that the pleading is based on information furnished to counsel . . . [which] has been gathered . . . in the course of [the] lawsuit" and that the "language of the pleading is that of counsel and not of the [signer paralegal]" was wholly defective under Rule 1024(c) and inadequate to support entry of judgment against appellants).  Counsel may verify a pleading for his or her client when the conditions delineated in Rule 1024(c) are present.  **Lewis v. Erie Ins. Exchange**, 421 A.2d 1214, 1217 n.2 (Pa. Super. 1980).  Moreover, the source of information need only be indicated for those matters not stated to be within the signer's own knowledge.  **See Monroe Contract**, **supra** (where all information pertinent to petition was within counsel's knowledge and failure to state where other information was derived was inconsequential error which was not prejudicial).

substituted verification is signed by a Wells Fargo vice president of loan documentation on behalf of US Bank; at the time, Wells Fargo was still acting as the servicing agent for US Bank. In the substituted verification, the vice president verifies that she is authorized to execute the verification on behalf of the Plaintiff and that the facts set forth "in the foregoing Civil Action in Mortgage Foreclosure are true and correct to the best of his/her knowledge, information and belief." Verification, 3/20/09.

Thereafter, on July 27, 2010, US Bank filed an amended complaint attaching a verification from Herman Kennerty, another vice president of loan documentation for Wells Fargo. In his verification, Kennerty states that he is authorized to execute the verification on behalf of US Bank and that "the facts set forth in the foregoing Amended Complaint in Equity are true and correct to the best of [his] knowledge, information and belief." Verification, 7/27/10.

Defendants filed preliminary objections, seeking dismissal of US Bank's amended complaint, claiming that the Bank's verification was defective because it: (1) was not taken by one of the parties; (2) does not state the reason why the verification is not or could not be taken by one of the plaintiffs; (3) does not set forth the source of the information as to the matters contained in the complaint; and (4) does not state that the Plaintiff is outside the jurisdiction of the court and its verification could not be obtained within the time allowed for filing the pleading. Defendants' Preliminary Objections to Plaintiff's Amended Complaint, 8/16/10, at 3. In

its response to Defendants' preliminary objections, US Bank averred that the amended complaint "was properly verified by a representative of the attorney-in-fact for [US Bank], and complies with Pennsylvania law." Plaintiff's Response to Defendants' Preliminary Objections, 8/17/10, at 5.

At all times relative to the verification issue, Wells Fargo was acting as the servicing agent for US Bank. Counsel for US Bank noted at an evidentiary hearing on Defendant Prince's motion for sanctions that, as the servicer of the loan, Wells Fargo has continued to maintain possession of the mortgage note and that no official at US Bank, as trustee, would be capable of answering specific questions regarding the mortgage documents kept in the ordinary course of business. N.T. Hearing on Motion for Sanctions, 2/18/14, at 6-8.[10]

_____

[10] Prior to disposition of Defendants' original preliminary objections, Defendants moved to file amended preliminary objections on October 13, 2010, rendering all prior preliminary objections withdrawn or moot. In their amended objections, Defendants no longer raised a Rule 1024 verification issue. On October 25, 2010, prior to ruling on Defendants' motion to file amended preliminary objections, the court dismissed Defendants' preliminary objections for failure to file a brief after US Bank praecipied for argument. **See** Montgomery County Local Rule of Civil Procedure 1028(c)(4). However, the court vacated its order, as improvidently granted, and directed the court administrator to list the motion for leave to file amended preliminary objections to the amended complaint for argument upon praecipe. On March 4, 2011, the trial court entered an order and accompanying stipulation from the parties granting Defendants leave to file amended preliminary objections to Plaintiff's amended complaint. After filing their amended preliminary objections, the trial court denied the objections in July 2011. Therefore, we could alternatively find that Defendants have abandoned this claim on appeal.

Defendants are correct that US Bank did not state in its verifications that Wells Fargo, original mortgagor and current servicer and holder of the note, was in the best position to verify pleadings or answer any questions regarding the mortgage documents. However, this exact position was clearly advanced to the court at the motion for sanctions hearing. Defendants were unable to advance any colorable argument as to how the omission of this language prejudiced them in defending this case that is now more than six years stale. Therefore, because amendment of the verifications at this stage of the proceedings would serve no practical purpose and the error is of such a *de minimus* technical nature that it did not prejudice Defendants' substantive rights, Defendants are not entitled to relief on this claim. **Monroe Contract**, **supra**.

Next, Defendants claim that summary judgment was improperly granted on the following related bases: (1) US Bank does not have standing to bring either the reformation or foreclosure actions; (2) there was a genuine issue regarding the Wells Fargo assignment of the mortgage to US Bank at the time the foreclosure action was instituted; (3) US Bank is not a named mortgagee; and (4) there was no credible evidence of Defendants' default on the mortgage.

This case involves a discrepancy in the legal description of the property found in the Powers' 2002 deed and the Defendants' 2005 deed. The former describes the property as consolidated Lots A and B, the latter completely omits any description of Lot A. Moreover, the original deed

executed when the Powers purchased the property in 2001 lists the lots separately. Despite these varying legal descriptions, the record reveals that when Defendants purchased the instant property from the Powers in 2005, they intended to buy the *entire* property identified as 624 Montgomery School Lane, with its corresponding tax parcel number. Defendant McClain conceded that neither the agreement of sale nor the Powers' disclosure statement made any specific reference to Parcels A and B or the property's metes and bounds description, nor was there anything in writing promising to convey a deed that specifically referenced Lot A and Lot B. **See** N.T. Judge Green Trial, 2/12/13, at 155-58, 230, 297. In fact, Defendant McClain did not notice the legal description error in the 2005 deed until October 2009. **Id.** at 70. Additionally, Defendant Prince acknowledged that when he signed the agreement of sale he was unaware that there had been two lots identified separately as Premises "A" and Premises "B"; he, too, was unaware of the separate A and B Lot descriptions until he was served with the foreclosure lawsuit in 2009. **Id.** at 343.

As purchasers of land, Defendants are charged with "constructive notice of every matter connected with or affecting their title, which appears by description of the parties, by recital, by reference, or otherwise, on the face of any deed, or upon any public record, which forms an essential link in the chain of instruments through which [they] take[] title[.]" **Volk v. Eaton**, 69 A. 91 (Pa. 1908) (citation omitted). Therefore, Defendants were imputed with knowledge of the consolidated description of the two lots

comprising 624 Montgomery School Lane. The trial court found that the 2002 deed was registered with Lower Merion Township and properly recorded in the Montgomery County Recorder of Deeds Office. Defendants presented no evidence to contradict this finding.

Instantly, the evidence presented at the reconsideration hearing on the Bank's motion for summary judgment conclusively established both US Bank's standing to bring the instant mortgage foreclosure action, as well as the fact that the Defendants were in default and had not paid the mortgage on the property since June 2008. *See* N.T. Reconsideration Hearing, 5/28/14, at 65-73; *see also J.P. Morgan Chase Bank v. Murray*, 63 A.3d 1258 (Pa. Super. 2013) (citing 13 Pa.C.S. § 3205(b) of Pennsylvania's Uniform Commercial Code, stating when note indorsed in blank, instrument becomes payable to bearer and may be negotiated by transfer or possession alone until specially indorsed); *Cunningham v. McWilliams*, 714 A.2d 1054 (Pa. Super. 1998) (in mortgage foreclosure action, summary judgment proper if mortgagors admit mortgage is in default, that they have failed to pay interest on obligation, and that recorded mortgage is in specified amount).

Defendants also claim that the court improperly granted summary judgment where US Bank did not request enlarging the mortgage lien to include the additional 100x205' Residential Lot (Lot A), and where US Bank judicially admitted, by attaching an incomplete legal description of the

property in its mortgage foreclosure complaint, that the lien only encompassed the 50x205 Vacant Lot (Lot B).

Instantly, US Bank's summary judgment motion specifically requested the "substitu[tion of] the incomplete legal description attached to the Mortgage with a full and complete legal description describing the entire property." Motion for Summary Judgment, 6/29/12, at ¶3. Therefore, the motion does specifically ask the court to reform the deed to include the entire property, Lots A and B, in its description.

Next, while the legal description of the property attached to US Bank's mortgage foreclosure complaint only includes the metes and bounds description for Lot B, it also includes the county parcel number and lot address (624 Montgomery School Lane) which refers to the *entire* property (Lots A and B). For an averment to qualify as judicial admission, it must be clear and unequivocal admission of fact. *John V. Conomos, Inc. v. Sun Co.*, 831 A.2d 696 (Pa. Super. 2003)). Moreover, an admission is not conclusively binding when "the statement is indeterminate, inconsistent, or ambiguous." *Greater Valley Terminal Corp. v. Goodman*, 176 A.2d 408, 410 (Pa. 1962). Accordingly, the legal description of the property, which includes the metes and bounds description as well as the property address and county parcel number, contains internal inconsistencies. Thus, we do not find that US Bank judicially admitted that the Defendants' mortgage only pertains to Lot B due to the lack of a clear and unequivocal admission of fact. *Conomos*, *supra*; *Greater Valley*, *supra*.

Defendants next assert that the trial court did not have jurisdiction to grant summary judgment in the Quiet Title Action because "all necessary and indispensable parties" were not named. Specifically, Defendants claim that Wells Fargo, as a predecessor in interest to the loan, should have been given the opportunity to be heard before the court declared US Bank to have a valid first-position mortgage lien against the property.

Pursuant to Pa.R.C.P. 1061(b)(3), an action to quiet title may be instituted in order to "compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land." Additionally, Pa.R.C.P. 2227, the compulsory joinder rule, states, "[p]ersons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants." Pa.R.C.P. 2227(a).

Historically, Wells Fargo originated the loan on Defendants' property and currently holds two junior mortgages against the property. However, it no longer possesses any rights in the mortgage such that it could be impacted by the outcome of this consolidated reformation and foreclosure case. *See* N.T. Summary Judgment Hearing, 5/2/13, at 46. Moreover, Wells Fargo, as servicer of the loan, verified the complaint and amended complaint in the reformation action. If it had competing interests such that it opposed the action brought by US Bank, it certainly had the opportunity to voice or raise those objections. Thus, we find no merit to this claim.

Defendants next argue that because there was no credible evidence of mutual mistake, summary judgment was improperly granted in favor of US Bank. We disagree.

It is well known that:

> A court of equity has the right to reform a deed where mutual mistake appears. The right to reformation of a deed in equity, if mutual mistakes appear, is unquestionable where the purpose is to correct the inaccurate description given therein, and make it conform to the intention of the parties; also that where a mutual mistake in the description appears, reformation of the deed will be directed notwithstanding an express denial by the defendant that an error was made.

**Armstrong County Bldg. & Loan Ass'n v. Guffyb**, 200 A. 160, 163 (Pa. Super. 1938). **See Dudash v. Dudash**, 460 A.2d 323 (Pa. Super. 1983) (when court reforms deed on basis of mutual mistake, it must reform deed to reflect intent of parties).

As we have already discussed, the evidence demonstrates that the Defendants intended to purchase and mortgage the *entire* property, including both Lots A and B, and to solely reside on Lot A. Moreover, the court correctly concluded that the mortgagor would not have intended to issue a mortgage to cover only the vacant lot, Lot B, of the property. Because Lot A's metes and bounds description was not included on the deed or mortgage when Defendants acquired the property, the trial court and our Court properly determined that a mutual mistake in the description existed and that reformation of the deed was required in order to rectify the

- 18 -

inaccurate property description. We see no error in this judicial action. **_Dudash_**, **_supra_**.

Defendants next claim that the court did not have the authority to grant US Bank the equitable remedy of deed reformation because when Defendants declared bankruptcy the trustee became a _bona fide_ purchaser of the property by operation of law.

Section 544 of the United States Bankruptcy Code allows a trustee in bankruptcy to avoid certain claims against a debtor's estate. **_See_** 11 U.S.C. §544(a)(3). Specifically, the statute permits the trustee to stand in the shoes of a lien or judgment creditor, or _bona fide_ purchaser, of the debtor's real property. **_Id._** However, for a trustee to exercise his or her rights to the property, he or she must affirmatively commence an adversary action, within the applicable statute of limitations, to perfect the lien under section 544. Where a trustee does not timely commence the action, the creditor retains its unperfected lien.

Because no trustees involved in the Defendants' bankruptcy proceedings (which are now closed)[11] commenced any proceedings to attack US Bank's mortgage lien, the trial court had the authority to grant US Bank's requested equitable relief to reform the deed. **_See also Johnson v. Home_**

---

[11] Pursuant to 11 U.S.C § 546(a), "an action or proceeding under . . . section 544 . . . may not be commenced after the earlier of . . . the time the case is closed or dismissed."

***State Bank***, 501 U.S. 78, 83 (1991) (no violation of section 524 occurs where judgment creditor seeks *in rem* relief in post-bankruptcy reformation action).

Finally, Defendants assert that the trial court improperly applied the doctrine of collateral estoppel because nothing regarding the deed in the prior Delaware County reformation action was essential to the outcome of the current mortgage foreclosure action. We disagree.

Collateral estoppel operates to "prevent a question of law or issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." ***Day v. Volkswagenwerk Aktiengesellschaft***, 464 A.2d 1313, 1318 (Pa. Super. 1983) (citations omitted). Moreover, collateral estoppel will bar any issue of fact previously litigated and determined by a valid and final judgment even if the subsequent action involves different causes of action and/or parties. ***Id***. at 1319.

The trial court concluded that Defendants did not intend to purchase the property as two separate lots and that there was an error, a result of mutual mistake, in the legal description of the property contained in the 2005 deed. In coming to this conclusion, the court examined the Defendants' actions and dealings with Wells Fargo regarding the loan and mortgage. These determinations were clearly essential to the current mortgage foreclosure action involving Defendants and US Bank. Therefore, we find no merit to this claim.

Order affirmed.

Judge Platt joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/16/2015