J-E02007-17

2018 PA Super 2

| ALDIS RUTYNA AND MARY JANE RUTYNA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| | : | No. 895 WDA 2016 |
| WILLIAM S. SCHWEERS, JR. | : | |

Appeal from the Order Entered June 1, 2016
In the Court of Common Pleas of Allegheny County Civil Division at No(s):
GD 07-025594

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

OPINION BY LAZARUS, J.:                    **FILED JANUARY 04, 2018**

Aldis Rutyna and Mary Jane Rutyna appeal from the order, entered in

the Court of Common Pleas of Allegheny County, granting Appellee William

S. Schweers, Jr.'s motion for a compulsory nonsuit[1] and dismissing all claims

_____

[1] Although the trial court's order indicates that it granted a compulsory nonsuit, in effect the order entered summary judgment in favor of Schweers as the determination was made on the pleadings and before any evidence was presented on behalf of the Rutynas. **_See Rivera v. Home Depot USA, Inc._**, 832 A.2d 487 (Pa. Super. 2003) (nonsuit may not be entered before any testimony taken). We note that our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. **_Merriweather v. Philadelphia Newspapers, Inc._**, 684 A.2d 137, 140 (Pa. Super. 1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in
_(Footnote Continued Next Page)_

in the Rutynas' underlying malpractice action. After careful review, we reverse and remand for trial.

The instant legal malpractice action[2] relates to an underlying medical malpractice action filed by the Rutynas against William F. Donaldson, III, M.D., and the University of Pittsburgh Medical Center-Presbyterian ("UPMC"). In January 2004, Mr. Rutyna underwent a laminectomy[3] performed by Dr.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

the light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

[2] In order to prove legal malpractice, a plaintiff must prove: "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989). Here, we have a legal malpractice case stemming from an underlying medical malpractice action instituted by the Rutynas. To state a cause of action for medical malpractice, Pennsylvania law requires a plaintiff to prove the following: "(1) the [medical provider] owed a duty to the patient; (2) the [medical provider] breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm. Relevant to this appeal, the patient must offer an expert witness who will testify to a reasonable degree of medical certainty, that the acts of the [medical provider] deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Wolloch v. Aiken*, 756 A.2d 5, 14-15 (Pa. Super. 2000) (citation omitted), *rev'd on other grounds*, 815 A.2d 594 (Pa. 2002).

[3] Laminectomy is surgery that creates space by removing the lamina, the back part of the vertebra that covers the spinal canal. Also known as decompression surgery, laminectomy enlarges the spinal canal to relieve pressure on the spinal cord or nerves. http://www.mayoclinic.org/tests-procedures/laminectomy/basics/definition/PRC-20009521 (last visited on 10/11/17).

Donaldson at UPMC; the surgery was complicated by a dural tear.[4]  The

Rutynas' medical malpractice complaint alleged that Mr. Rutyna suffered

nerve damage and other complications from the surgery.  Consequently, the

Rutynas engaged Schweers to pursue the medical malpractice action on their

behalf.  On September 19, 2006, the trial court entered a *non pros* and

dismissed the medical malpractice action after the Rutynas failed to file a

certificate of merit, a prerequisite for a professional liability action brought

pursuant to the Medical Care Availability and Reduction of Error Act ("MCARE

Act"), 40 P.S. §§ 1303.101-1303.910.

On December 5, 2007, the Rutynas filed the instant legal malpractice

action against Schweers alleging negligence, fraudulent misrepresentation,

negligent misrepresentation, breach of fiduciary duty, and breach of

contract.[5]  Specifically, the Rutynas alleged that Schweers' performance fell

below the standard of care for failing to file the required certificate of merit,

---

[4] Dural tears are complications of spine surgery in which the thin covering over the spinal cord is nicked by the surgeon's instruments. https://www.verywell.com/cerebrospinal-fluid-leak-and-dural-tears-296512 (last visited 10/11/17).  Incidental dural tears during lumbar decompressive surgery is a relatively rare complication causing severe consequences. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3198662 (last visited on 10/11/17).

[5] The Rutynas also alleged *respondeat superior*/vicarious liability and a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*, against the law firm.  In January 2011, the trial court struck the UTPCPL, fraudulent and negligent misrepresentation, and breach of fiduciary duty counts.

resulting in the termination of their medical malpractice action. On September 12, 2012, Schweers filed a motion for summary judgment alleging that the Rutynas were unable to secure a legal expert report to prove that he did not obtain at least one medical expert report in the underlying medical malpractice case and, thus, was unable to prove proximate cause in the instant legal malpractice action. In response to the motion, the Rutynas attached a medical expert report[6] from Mark R. Foster, M.D., dated February 28, 2008, in order to establish Dr. Donaldson's/UPMC's negligence in the underlying medical malpractice case.

On January 15, 2013, the court struck the Rutynas' December 17, 2012 certificate of merit and removed the case from the May 2013 trial list and placed the case on the September 2013 trial list. On February 22,

_____

[6] In his report, Dr. Foster opines:

> Dr. Donaldson's care is significantly below the standard of care. First, he damaged the important lower sacral nerves, as they passed by his operative sight without documenting – or apparently being aware of – the damage that he has done. . . . Further, he seems to be taken by surprise when the January 29, 2004 urinary retention presents itself. . . . Consequently, Dr. Donaldson not only deviated from the standard of care during surgery, he also deviated in the standard of care by railing to recognize and care for the injury caused. . . . To a reasonable degree of medical certainty, Dr. Donaldson caused an intraoperative dural leak which damaged the sacral nerve. This damage to the sacral nerve roots caused permanent neurologic damages and eliminated bowl and bladder continence, which were not even recognized by the attending surgeon performing the procedure.

Expert Report of Mark R. Foster, Ph.D., M.D., F.A.C.S., 2/28/08, at 2-3.

2013, the court ordered the Rutynas to provide an expert report with respect to the legal malpractice claim within 45 days or suffer the entry of summary judgment. In April 2013, Schweers *praeciped* to enter summary judgment when the Rutynas failed to comply with the court's February order to provide a timely expert liability report.

The Rutynas filed a notice of appeal from the court's decision. Our Court vacated the underlying summary judgment order and remanded for further proceedings. ***See Rutyna v. Schweers***, 1170 EDA 2014 (Pa. Super. filed June 10, 2015) (unpublished memorandum decision) (summary judgment vacated where Rutynas never received copy of trial court's order requiring them to file expert report as to legal malpractice claim). The Rutynas subsequently filed an expert report to support the legal malpractice action. On April 27, 2014, Schweers again moved for summary judgment, claiming that the expert report failed to satisfy the Rutynas' burden. The trial court granted summary judgment and the Rutynas appealed that decision. On appeal, our Court reversed the order granting summary judgment and remanded the case. ***See Rutyna v. Schweers***, 757 WDA 2013 (Pa. Super. filed March 31, 2014) (unpublished memorandum decision) (record demonstrated that Schweers, at most, contacted one expert in medical malpractice case to support certificate of merit; Rutynas expert opined that where attorney contacts only one expert to support certificate of merit and receives negative response, standard of care is breached). The case was scheduled to be tried, upon remand, on January 11, 2016.

In October 2015, Schweers moved to bifurcate the case, asking the court to first adjudicate the underlying medical malpractice case before resolving the professional, legal malpractice claim against Schweers. The Rutynas filed a response opposing the request on the grounds that bifurcation would unnecessarily complicate trial. On October 27, 2015, the court bifurcated the matter, proceeding with the medical malpractice case. In November 2015, Schweers filed a motion to continue the medical malpractice case due to recently retained counsel, Attorney John C. Conti's unavailability; the Rutynas opposed the motion. The Honorable Ronald W. Folino, administrative trial judge, granted the continuance, relisting the case for the end of May 2016, but noting that no further continuances would be granted.[7]

On May 16, 2016, the Rutynas filed a motion for a continuance after discovering, just six days prior, that Dr. Foster had signed a consent judgment, in an unrelated case, in which he had agreed not to testify against UPMC or any of its physicians in any pending or future case. *See* Plaintiffs' Motion for Continuance, 5/16/16, at 4. Schweers filed a response,

---

[7] While Schweers contends that the Rutynas specifically asked the trial court not to grant any further continuances in the matter, we note that this allegation should not be reason enough to deny their subsequent request for a continuance. Even if the Rutynas believed that postponement of trial would not be necessary in November 2015, their request for a continuance six months later required the trial court's reconsideration of the matter in light of counsel finding out just weeks before trial that its primary medical expert would not be permitted to testify in the case.

opposing the motion on the basis that the Rutynas had not done their "due diligence"[8] to ensure Dr. Foster's participation at trial and that "it should be no surprise to Plaintiffs' that the legal battle between UPMC and Dr. Foster culminated recently with a Consent Judgment Agreement wherein Dr. Foster agreed not to serve as an expert medical witness in any pending or future actions against UPMC." Defendant's Response in Opposition to Plaintiffs' Motion for Continuance, 5/16/16, at 6-7. The Honorable Ronald W. Folino denied the motion, with prejudice, by order on the same day. Subsequently, on May 25, 2016, the Rutynas filed a motion for sanctions claiming that, based upon the entry of new defense counsel's appearance and request for a continuance, it is reasonable to conclude "that Schweers' insurer (and possibly defense counsel) has sought to interfere with the Rutynas' expert witness.[]" Plaintiffs' Motion for Sanctions or Other Appropriate Relief, at ¶19.

In May 2016, Schweers filed a motion *in limine* to preclude Dr. Foster from testifying at trial and/or introducing his expert report. After a hearing, the court denied the Rutynas' motion for sanctions; however, the Honorable Robert Colville granted Schweers' motion, precluding Dr. Foster from "testify[ing] at trial as to the applicable standard of care and any alleged

---

[8] Notably, Judge Colville specifically noted that the Rutynas' attorney was diligent on behalf of his clients, "ha[ving] made every reasonable and appropriate professional effort to represent [his] client and advance their cause." ***See*** N.T. Motion *in Limine*, 6/1/16, at 73.

breaches thereof. Moreover, [the order stated that] Dr. Foster's expert report shall **not** be admissible as evidence at trial." Order, 6/1/16 (emphasis in original). Specifically, Judge Colville found that Dr. Foster did not possess adequate qualifications under MCARE because: (1) Dr. Foster had not practiced within the subspecialty of orthopedic surgery within the past ten years; (2) Judge Colville was not predisposed to waive the ten-year requirement; and (3) Judge Colville would not waive the five-year sub-specialty requirement under MCARE.[9] N.T. Motion *in Limine*, 6/1/16, at 70.

_____

[9] Under the MCARE Act:

> (a) GENERAL RULE.— No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

> (b) MEDICAL TESTIMONY.— **An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:**

> **(1)** Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

> **(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.**

> Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

*(Footnote Continued Next Page)*

On that same date the court entered an order dismissing, with prejudice, the Rutynas' legal malpractice action against Schweers finding that the Rutynas "do not have a medical witness who can opine as the requisite standard of care and breach thereof in support of their underlying medical malpractice claim and . . . [therefore, they] cannot prove either their underlying medical malpractice claim as a matter of law or their legal malpractice claim as a matter of law." Order, 6/1/16. The Rutynas filed a

*(Footnote Continued)* _____

> (c)  STANDARD OF CARE.— In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:
>
>> (1)  Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.
>>
>> **(2)  Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or . . .(e).**
>
> \*    \*    \*
>
> (e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND KNOWLEDGE.— **A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.**

40 P.S. § 1303.512 (emphasis added).

timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[10] They present the following claims[11] for our review:

> (1) Did the Court err in denying the [Rutynas'] Motion for Continuance to permit them sufficient time to procure a "replacement" expert?
>
> (2) Did the Court err in dismissing the case with prejudice due to the [Rutynas'] inability to produce an expert medical witness, when such inability was caused by the actions of [Schweers]?
>
> (3) Did the Court err in holding that [the Rutynas'] proposed expert was not qualified to testify under the [MCARE]?
>
> (4) Did the Court err in denying the [Rutynas'] Motion for Sanctions or Other Appropriate Relief arising out of [Schweers'] interference with [the Rutynas'] expert?

Appellants' Brief, at 4.

In their first issue on appeal, the Rutynas contend that the trial court erred in denying their motion for a continuance to provide them sufficient time to procure a replacement medical expert witness.

To determine whether a trial court abuses its discretion by denying a request for a continuance,[12] the reviewing court shall consider the following

---

[10] On June 30, 2016, the Rutynas filed a praecipe for the entry of judgment in favor of Schweers. **See** Pa.R.C.P. 237.

[11] We have renumbered the Rutynas' claims for ease of disposition on appeal.

[12] Pennsylvania Rule of Civil Procedure 216(A) provides the following grounds for a continuance: (1) agreement of all parties or their attorneys, if approved by the court; (2) illness of counsel of record, a material witness, or a party; (3) inability to subpoena or to take testimony by deposition,
*(Footnote Continued Next Page)*

factors: "whether there was prejudice to the opposing party by a delay, whether opposing counsel was willing to continue the case, the length of the delay requested, and the complexities involved in presenting the case." ***Papalia v. Montour Auto. Serv. Co.***, 682 A.2d 343, 345 (Pa. Super. 1996) (citations omitted). "An abuse of discretion exists where the trial court's determination overrides or misapplies the law, its judgment is manifestly unreasonable, or the result or partiality, prejudice, bias or ill-will." ***See Majcazyk v. Oesch***, 789 A.2d 717, 720 (Pa. Super. 2001).

Factually, the Rutynas emailed Dr. Foster on April 28, 2016, just over one month prior to the scheduled June 2, 2016 trial date, to remind him of the trial date and ensure his availability.[13] However, less than two weeks later, on May 10, 2016, the Rutynas discovered that Dr. Foster had signed a consent judgment and agreed not to testify against UPMC or any of its

---

*(Footnote Continued)* ──────────────

commission, or letters rogatory, of any material witness; (4) such special ground as may be allowed in the discretion of the court; (5) the scheduling of counsel to appear at a proceeding under the Pennsylvania Rules of Disciplinary Enforcement; (6) the scheduling of counsel to appear at a proceeding involving the discipline of a justice, judge or district justice. Pa.R.C.P. 216(A).

[13] The Rutynas' attorney, James R. Cooney, Esquire, testified that he called Dr. Foster several times before trial, asking him if he was available and ready for the upcoming trial. N.T. Motion in *Limine*, 6/1/16, at 46. Attorney Cooney stated that Dr. Foster answered all questions in the affirmative and "never said one thing to me that he had entered into an agreement with UPMC that he could not testify." ***Id.***

physicians in any pending or future cases.[14]  Less than one week later, on

May 16, 2016, the Rutynas filed their motion for continuance, stating:

> The Plaintiffs do not have sufficient time to obtain a medical expert to replace Dr. Foster prior to the scheduled trial date of June 2, 2016.  Without a medical expert, the Rutynas have no chance of prevailing on their claims against Schweers.
>
> Wherefore, the Plaintiffs respectfully request this Honorable Court to continue this case to the January 2017 Trial List.

Rutynas' Motion for Continuance, 5/16/16, at 5.  On that same date, Judge

Folino entered an order denying the Rutynas' motion and a separate order

assigning Judge Colville for trial in the case.

Instantly, Judge Colville gave the following reason for Judge Folino's

denial of the Rutynas' continuance motion:

> First, a similar motion for continuance was presented to, and denied by, the Honorable Ronald W. Folino, Calendar Control Judge, less than two weeks earlier.  Second, this case is over a decade old.  It's rather expensive (if not tortuous) history need not be recounted in full here.  The only "surprise" that befell [the Rutynas] respecting the scheduled trial in this matter was that [the Rutynas'] own expert witness had determined months in advance that he would not offer testimony against [Schweers]. Why [the Rutynas'] expert witness did not provide that information to [the Rutynas'] counsel is unknown, but his failure to do so is not the fault of [Schweers], the Court, or for that

---

[14] The consent judgment specifically states:

> Dr. Foster agrees not to serve as an expert witness adverse to UPMC, any of its affiliated entities, or any of its physicians or other health care providers, in any pending or future matter in any jurisdiction.

Consent Judgment, 4/29/16, at ¶1(A).

matter, [the Rutynas'] counsel, but it is also not a justifiable basis for a continuance at trial. Moreover, as discussed above, even if [the Rutynas'] proffered expert were available for trial, he is simply not qualified to offer the proffered expert testimony.

Trial Court Opinion, 8/8/16, at 5 (emphasis added).

Analyzing the **Papalia** factors, we note that Schweers claims he will suffer significant prejudice if trial is delayed because his key fact witness, Dr. Lance Perling, is suffering from renal failure[15] and may not be able to testify in seven months. He avers that loss of Dr. Perling's testimony would severely prejudice his chance of winning the case. Schweers also alleges that he has good cause to oppose the continuance motion where the Rutynas failed to secure another expert for their case after Dr. Foster's competency and ability to testify were questioned back in 2010. In terms of the length of a continuance requested, the Rutynas requested a seven-month delay to the next jury trial list. Finally, as Schweers points out, the underlying medical malpractice case involves a surgical standard of care theory which is more complicated than a standard of care relating to clinical treatment. Appellee's Supplemental Brief on Reargument, at 11 ("Here, the specific care at issue was a third back surgery performed by an orthopedic

_____

[15] In an April 28, 2016 email discussing his availability for being deposed, Dr. Perling stated that he has renal failure and has been on dialysis for approximately three years. Lance H. Perling, M.D., E-Mail, 4/28/16. He also indicted that he undergoes dialysis three nights a week on Sundays, Tuesdays, and Thursdays. However, he stated that he could arrange for out-of-town dialysis so that he could travel longer. **Id.**

surgeon . . . due to a preoperative diagnosis of 'recurrent disc herniation and stenosis with severe leg pain and weakness.'").

With regard to the specific facts leading to the requested continuance, the Rutynas alleged that once they were notified that Dr. Foster had signed the consent agreement, they contacted several, potential replacement physicians who deem themselves experts in the field, but that none of those doctors could review the relevant records and be ready to testify by the scheduled June trial date.  Appellants' Brief, at 19-20; *see* N.T. Motion *In Limine* Hearing, 6/1/16, at 6-7.  Thus, the Rutynas' justification for moving for the continuance was not based on a cause previously existing and known.  **See Baysmore v. Brownstein**, 771 A.2d 54 (Pa. Super. 2001). Furthermore, it is evident that the Rutynas expeditiously filed for a continuance within days of becoming aware of the consent agreement and learning that replacement experts would not be ready to testify by the originally scheduled trial date.  **Cf. Princess Hotels International v. Hamilton**, 473 A.2d 1064 (Pa. Super. 1984) (where appellant knew retained counsel would not be able to represent him in November 1980, almost three months prior to trial date, yet waited until only one week prior to trial to seek new attorney and did not request continuance until four days before trial, continuance request properly denied).

Here, by requesting a continuance the Rutynas were not asking for extra time to secure an unavailable witness.  Rather, they needed additional time to secure *another* expert witness as Dr. Foster was not permitted to

testify at trial due to the consent judgment he entered into with UPMC. The reality is that without a standard of care expert who was prepared to testify, to a reasonable degree of medical certainty, that Dr. Donaldson's/UPMC's care deviated from the acceptable standard during surgery and post-operatively, the Rutynas' chance of a jury verdict in their favor was essentially extinguished.

Schweers contends that because a trial judge in 2010 cast doubt on Dr. Foster's ability to testify under MCARE, the Rutynas were not duly diligent in ensuring that they would have an expert for trial. Specifically, Schweers references a 2010 case from our Court that states "[o]n September 15, 2005, [Dr. Foster] was summarily suspended by UPMC after performing surgery on the wrong side of a patient." *See Foster v. UPMC South Side Hosp.*, 2 A.3d 655 (Pa. Super. 2010). Based upon this unrelated case, Schweers asserts that "Plaintiffs' Counsel should have foreseen the possibility that Dr. Foster might not be able to testify" in the instant case, and that "it should be no surprise to Plaintiffs that the legal battle between UPMC and Dr. Foster culminated recently with a Consent Judgment Agreement wherein Dr. Foster agreed not to serve as an expert medical witness in any pending or future cases[.]" Defendants' Response to Plaintiffs' Motion for Continuance, at 3 ¶ 23.

The issue regarding Dr. Foster's qualifications under MCARE is a red herring as it relates to the issue of whether a continuance was proper in this case.[16]  At the time that the Rutynas filed their continuance motion, Dr. Foster was not just unavailable, he was no longer able to testify in the matter due to a contractual agreement he had made with the defendant hospital.  Whether he was qualified to testify in the instant matter is not at issue.  There was no question as to whether Dr. Foster would ever be *able* to testify – he was contractually precluded under his consent agreement with UPMC.

"While certain exceptions exist to the general rule [regarding timeliness of an application for a continuance] whereby the court may in its sound discretion grant [the] request . . . due to the absence of a party or witness, the court may still demand a showing of diligence on the part of the movant before so granting."  ***Geiger v. Rouse***, 715 A.2d 454, 457 (Pa. Super. 1997) (citation omitted).  Notably, Judge Colville recognized at the parties' motion *in limine* hearing:

> **And I also want to note, I certainly made no finding that Plaintiff[s'] counsel was in any way less than diligent acting on [his] client's part.  Frankly, quite to the contrary.  I think that in every respect, as far as I can**

---

[16] Among other things, defense counsel argued at the motion *in limine* hearing that he had "discussed with Plaintiffs' counsel the weaknesses and ineffectiveness of Dr. Foster as an expert witness . . . at various court proceedings and at several mediations in the matter."  N.T. Motion in Limine Hearing, 6/1/16, at 26.  However, counsel qualified this statement by saying that "I don't think Mr. Cooney was involved in those discussions."  ***Id.***

- 16 -

> **detect, Plaintiff[s'] counsel has made every reasonable and appropriate professional effort to represent their client and advance their cause.**
>
> Dr. Foster is not here. He is not here to defend himself or comment upon his actions or conduct, but if I have to guess perhaps if the fault lies anywhere particularly it is with Dr. Foster's failure to notify [Plaintiffs' counsel] of the change in circumstances that he voluntarily entered into the consent agreement. I think that was the critical issue here. He ma[d]e a promise to do it. He is not compelled to do it. He agrees to do it for his own personal set of reasons. I presume, and rather than fulfill a professional responsibility to let [Plaintiffs' counsel] know that, "Hey, I'm now compromised," or I'm limited in some way," he fails to do so.

N.T. Motion *in Limine*, 6/1/16, at 73-74 (emphasis added).[17]

Under a totality of the circumstances, we conclude that the trial court manifestly abused its discretion in denying the Rutynas' continuance motion where, through no fault of their own, their expert was precluded from testifying. The simple fact is that the Rutynas found out that their expert was unable to testify in the case less than three weeks before trial and they were unable to secure a competent expert who would have sufficient time to

_____

[17] Moreover, while Schweers now contends that he will suffer prejudice from a delay in trial, he, himself, requested a continuance in November 2015, just two months before a scheduled trial date of January 2016, due to recently retained counsel's unavailability. In fact, Schweers' current counsel admitted that Attorney Conti's "availability and willingness to participate in the defense of the medical portion of this case was confirmed as of April 30, 2010[,] . . . but the decision was made to actively involve Mr. Conti only when the matter was actually proceeding to trial." N.T. Motion in Limine, 6/1/16, at 25 (emphasis added). Notably, on September 11, 2015, the case was scheduled for the January 11, 2016 trial call. Schweers waited over one month to enter Attorney Conti's appearance and then yet another month to file a continuance motion due to Attorney Conti's unavailability as a result of his trial schedule, asking for trial to be continued for another 4 or 8 months.

acquaint himself with this "case within a case" and prepare his testimony for trial. Moreover, due to the complexity of the matter and the vital nature of an expert's testimony to prove a breach in the standard of care, the court's decision is manifestly unreasonable. By denying the continuance, the trial court technically sealed the Rutynas' fate, where they were unable to secure a new expert and where Dr. Foster was not permitted to testify in *any* proceeding involving UPMC and, thus, would not be able to offer his expert opinion or expert report at trial.

Swift resolution of cases is, no doubt, the linchpin of judicial economy. However, it is not an end in itself. The overall effect that an additional seven months would have added onto this already protracted case is negligible, not to mention the fact that in dismissing the case, we now have "a case, within a case, within a case." ***See Mazzenga v. Dorfman***, 415 A.2d 1248, 1250 (Pa. Super. 1979) (where non-suit was entered after court denied continuance in medical malpractice case, court reversed on appeal, stating, "we believe the instant case to be one of those situations requiring special consideration in the interest of justice to the litigants in having this matter adjudicated on the merits. We are mindful of the lower court's concern with respect to backlog on trial calendars in the Commonwealth[, but] we believe that the imposition of an appropriate sanction would be a more appropriate device to employ to insure speedy disposition of cases."); ***see also Budget Laundry Company v. Munter***, 298 A.2d 55 (Pa. 1972) ("But it must always be borne in mind that lawsuits are more than numbers

or punches in computer cards. Individual cases are, of course, of great importance to the litigants involved, and courts must not overreach in their zeal to move cases to such an extent as to allow for no deviations from strict and literal adherence to policies justifiably laid down to improve the condition of the courts.").

Here, by denying the continuance, the court prevented the Rutynas from proving their case; Plaintiffs' prejudice was irreversible. **_See_** **_Commonwealth v. Brown_**, 505 A.2d 295, 298 (Pa. Super. 1986) ("[a]n appellant must be able to show specifically in what manner he was unable to prepare his [case] or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice."). Under such circumstances, we are constrained to conclude that the court's decision was manifestly unreasonable and, therefore, amounted to an abuse of discretion.

Order reversed. Case remanded for trial.[18] Jurisdiction relinquished.

President Judge Gantman, Judge Bender, Judge Bowes, Judge Ott, Judge Stabile and Judge Dubow join this Opinion.

Judge Olson concurs in the result.

Judge Shogan did not participate in the consideration or decision of this case.

---

[18] Having reversed the order granting summary judgment by concluding that the trial court erred in denying the Rutynas' continuance, we need not address the remaining issues as the case will be remanded for trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/4/2018