J-S55029-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

IN RE: ADOPTION OF: W.J.R. : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: B.J.R. :
:
:
:
:
:
:
: No. 852 WDA 2019

Appeal from the Order Entered May 3, 2019
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): No. 149 of 2018

BEFORE: MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: FILED DECEMBER 06, 2019

B.J.R. ("Father") appeals from the order terminating his parental rights to W.J.R. ("Child"). We conclude the trial court did not abuse its discretion and, therefore, affirm.

Child was born in June 2012 to J.M.K. ("Mother") and Father (collectively "Parents"). The Westmoreland County Children's Bureau ("the Agency") first became involved with Child, in August 2015, due to a referral regarding concerns with Parent's drug use and housing conditions. However, that case was ultimately closed in February 2016. By December 2016, the Agency received another referral indicating that Parents and Child had become homeless. The Agency helped Parents obtain housing in February 2017, but Parents could not maintain it. In March 2017, Father experienced a drug

_____

[*] Retired Senior Judge assigned to the Superior Court.

overdose and had to be revived with Narcan. Parents voluntarily placed Child with paternal grandparents ("Grandparents") during this time. However, at some point within the next few months, Child was again in the custody of Parents because on October 3, 2017, North Huntingdon police responded to Parents' home due to a report that Parents were using illegal drugs in front of Child. Although no arrests were made that day, the following day the police returned and ultimately had to taser Father.

Thereafter, the Agency took custody of Child after a Shelter Care Hearing on October 6, 2017. On November 17, 2017, the trial court adjudicated Child dependent and ordered Child's continued placement with Grandparents, an adoptive resource for Child. For purposes of the instant case, it is significant to note that at the conclusion of the dependency hearing, the trial court directed Father to, inter alia, undergo drug and alcohol evaluation and treatment, mental health evaluation and treatment, and anger management counseling. The trial court also ordered Father to obtain appropriate housing and a verifiable source of income. At several subsequent permanency review hearings, the court noted that Father had either not complied or minimally complied with this permanency plan. In the April and October 2018 permanency review hearings, the trial court noted that Father had only attended a limited number of offered visits with Child. By the April 2019 permanency review hearing, the trial court noted that Father had not attended any visits with Child at all, in large part due to his incarceration from October 2018 through March 2019. Father did successfully complete an

inpatient drug and alcohol program at Cove Forge Behavioral Health System, but failed to follow up with aftercare or treatment. On the day of the April 15, 2019 permanency review hearing, Father's drug screen was preliminarily positive for amphetamines, cocaine, and methamphetamines.

Meanwhile, on November 21, 2018, the Agency filed petitions to terminate the parental rights of Parents. The trial court held an evidentiary hearing regarding the petitions on April 25, 2019 ("termination hearing"), at which neither Parent appeared. Initially, Father's attorney informed the court that Father had indicated to him, just the previous day, that he would be attending the hearing. N.T., 4/25/19 at 4. During a lunch break, Father's attorney discovered that Father had left a message for him, shortly before the hearing was due to start, that he would not be attending the hearing due to illness. Id. at 127-128. The trial court attempted to call Father during the proceedings, but Father did not answer his phone. Id. at 130. Father's attorney requested a continuance, but the trial court declined, having already continued the hearing previously. Id. at 128.

At the termination hearing, Dr. Neil Rosenblum, a clinical psychologist, testified regarding his observations and recommendations regarding Parents and Child. Relevant here, Dr. Rosenblum opined that Father was unable to cooperate with treatment services sufficient to alleviate the conditions which led to Child's dependency and was more than a year away from being in a position to remedy the same. Id. at 32-38. Conversely, Child was thriving with Grandparents where he had a safe and stable home environment. Having

- 3 -

observed Child interacting with Father, Dr. Rosenblum noted that Child and Father were excited to see each and were affectionate. Id. at 15-16. Nevertheless, Dr. Rosenblum opined that while Child could potentially benefit from some contact with Father, removing Child from Grandparents would lead to emotional regression and would undo Child's significant emotional progress. Id. at 27-38. Accordingly, he recommended that Child would be best served by the permanency that adoption would provide, as opposed to any other permanency plan, including a permanent legal custodianship in favor of Grandparents. Id.

Also testifying at the termination hearing was Jennifer Austad, L.C.S.W., who has served as the Child's therapist since May 2018. Id. at 80. Austad reported that Child was showing significant progress in his emotional and cognitive development while in the care of Grandparents. Id. at 89. She recommended that the stability Child was experiencing with Grandparents should not be altered by the court. Id. at 88-93. Likewise, Rachel Sarver, B.A., who had conducted trauma therapy with Child shortly after he was removed from Parent's custody, reported that although Child was sad to leave Parents, he was very comfortable with Grandparents. Id. at 139.

Child's Agency caseworker, Janice Carnicella, also testified that while Child enjoyed seeing Father, he wanted to return home with Grandparents and was thriving under Grandparent's care. Id. at 191. Child indicated to Carnicella that he would prefer to remain with Grandparents. Id. at 212-213. Further, Carcinella explained that she had consulted with Grandparents

regarding their willingness to allow Parents to remain part of Child's life, if their bid to adopt Child was successful. Id. at 192-193. Carnicella indicated that Grandparents expressed the desire to include Parents, provided Parents remained on the path to recovery from their respective drug addictions.

Likewise, citing the foregoing evidence, Child's attorney, George Miller, Esquire, and Child's guardian ad litem, Richard J. Baumgardner, Esquire, opined that termination of Parent's parental rights would best serve the interests of Child. Id. at 224-226. Following the termination hearing, the trial court found that Agency established by clear and convincing evidence that grounds for termination existed under 23 Pa.C.S.A. § 2511(a)(2), (5), and (8), and that termination was proper under 23 Pa.C.S.A. § 2511(b).

Father filed a timely Notice of Appeal and Pa.R.A.P, 1925(b) statement. The trial court filed a Ra.R.A.P. 1925(a) statement, relying on its earlier filing in support of its termination order. Father raises the following issues for our review:[1]

> 1. Whether the Honorable trial court erred in terminating Father's parental rights despite Father, via counsel, requesting a continuance in the proceedings due to Father's inability to attend the evidentiary hearing[?]
>
> 2. Whether the Honorable trial court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Father under 23 Pa.C.S. § 2511(a)(2)[?]
>
> 3. Whether the Honorable trial court erred in finding by clear and convincing evidence that the moving party met

_____

[1] For ease of disposition, we have reordered Father's issues.

its burden as to terminating the parental rights of Father under 23 Pa.C.S. § 2511(a)(5)[?]

4. Whether the Honorable trial court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Father under 23 Pa.C.S. § 2511(a)(8)[?]

5. Whether the Honorable trial court erred in finding by clear and convincing evidence that the moving party met its burden under 23 Pa.C.S. § 2511(b) to show that the best interests of this Child are met by terminating Father's parental rights[?]

6. Whether the Honorable trial court erred in terminating Father's parental rights when less drastic options, such as subsidized permanent legal custodianship, were available, and would not require the Child to suffer the sense of loss and grief that necessarily accompany an Order of Termination[?]

Father's Br. at 4-5 (some capitalization and suggested answers omitted).

Before turning to the merits of Father's arguments regarding the termination of his parental rights, we consider Father's contention that the trial court erred by denying his request for a continuance of the termination hearing. Specifically, Father claims that the trial court erred by failing to grant him a continuance pursuant to Pa.R.C.P. 216(a)(2) (grounds for a continuance include "illness of…a party.") We decline to agree.

It is well settled that a trial court has significant discretion when deciding to grant or deny a continuance and such decision will not be reversed unless "an abuse of that discretion is apparent." Baysmore v. Brownstein, 771 A.2d 54, 57 (Pa.Super. 2001). When reviewing whether a trial court has

abused its discretion by denying a request for a continuance, this Court should examine "whether there was prejudice to the opposing party by a delay, whether opposing counsel was willing to continue the case, the length of the delay requested, and the complexities involved in presenting the case." Rutyna v. Schweers, 177 A.3d 927, 933 (Pa.Super. 2018) (citation omitted).

In the instant case, if the trial court had granted Father's request for a continuance, Child's need for permanency would have been further delayed. Accordingly, Father's bid for a continuance was opposed by the Agency, Child's attorney and Child's guardian ad litem. Because Father did not provide any details regarding his illness whatsoever to the trial court and did not answer the court's phone call on the day of the hearing, the court had no way to ascertain how long Father was seeking in terms of a continuance request. Finally, Father never indicated how his testimony would have altered the disposition of this case or how the particular complexities of this case required his testimony. Accordingly, we conclude that the trial court did not abuse its discretion by declining Father's request for a continuance of the termination hearing. See Baysmore, 771 A.2d at 57; Rutyna, 177 A.3d at 933.

In Father's next four issues he presents the overarching argument that the trial court erred by concluding that clear and convincing evidence supported the termination of his parental rights under 23 Pa.C.S.A. 2511(a) & (b). Father, in an argument that at least partially conflates Sections 2511(a) and (b), avers that termination of his parental rights was not in Child's best interests because Father and Child have "a close and genuine relationship."

Father's Br. at 11. Therefore, Father contends that the trial court erred by terminating his parental rights under Section 2511(a)(5), (a)(8), & (b). Further, although Father seems to concede that he has not been present for Child in some time, he still argues that the trial court improperly terminated his parental rights under Section 2511(a)(2) because he claims that he has completed drug rehabilitation, is living independently, and is seeking employment. Father also points to the testimony of Dr. Rosenblum as evidence that he could potentially be in a position to care for Child within 6 to 12 months from the date of trial. We do not agree.

When we review termination of parental rights cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (quoting In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." In re Adoption of K.C., 199 A.3d 470, 473 (Pa.Super. 2018). We may reverse a trial court decision for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d at 826.

Our Supreme Court has explained the reasons for applying an abuse of discretion standard of review in termination of parental rights cases:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even

> where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

Id. at 826-27 (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. In re Adoption of K.C., 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." Id. (quoting In re Z.S.W., 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by section 2511 of the Adoption Act. In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007). Under section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond

> between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

Id. (citations omitted).

To affirm the termination of parental rights, this Court need only agree with the trial court's decision as to any one subsection of section 2511(a), as well as section 2511(b). In re B.L.W., 843 A.2d 380, 384 (Pa.Super. 2004) (en banc). Here, we conclude that the trial court properly terminated Father's parental rights pursuant to Section 2511(a)(2).

Section 2511(a)(2) provides:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To terminate parental rights pursuant to Section 2511(a)(2), the moving party must produce clear and convincing evidence of the following: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or

refusal cannot or will not be remedied." In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa.Super. 2003).

In the instant case, the trial court aptly noted that Father has not performed any parental duties on behalf of Child since Child was removed from his custody in October 2017, over 18 months prior to the termination hearing. The last time Father visited with Child was in May 2018, at the bonding assessment performed by Dr. Rosenblum. Further, as Dr. Rosenblum set forth in his testimony, Father has been unable to reliably cooperate with treatment services sufficient to alleviate the conditions that led to the removal of Child from his care and, at the time of the hearing, was at least a year away from making any significant progress toward that goal. Accordingly, we conclude that the trial court did not abuse its discretion by concluding that sufficient evidence supported the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) because Father has caused Child to be without essential care and cannot or will not remedy the conditions, causing him to be unable to provide Child with such care.

Turning to Father's argument regarding Section 2511(b), Father contends that the trial court erred by determining that termination of his parental rights was in the best interests of Child. Father emphasizes that the Agency's own witnesses concluded that Father and Child have an affectionate bond. Father specifically points to the testimony of Child's therapist Austad as establishing that Child did not experience any emotional regression after visiting with Father. Moreover, Father maintains that the trial court failed to

consider the loss and grief Child would experience upon termination of the bond between himself and Child. We decline to agree.

As discussed above, Child's therapist Austad, in fact, recommended that Child was best served by the physical and emotional stability provided to him by Grandparents. Furthermore, Child's therapist, Sarver, agreed by testifying that although Child was sad to leave Parents, he was comfortable with his Grandparents. Likewise, Child's agency caseworker, Carnicella, described how Child was thriving under Grandparent's care and how Child had expressed a preference to remain with Grandparents. Moreover, Carnicella explained that Grandparents were amenable to allowing Parents to remain in Child's life, provided that Parents remained on the path toward recovery.

Significantly, Dr. Rosenblum, who evaluated the bond between Child and Father as well as between Child and Grandparents, concluded that although Child had an affectionate bond with Father, Child's best interests would be served by remaining with Grandparents. Dr. Rosenblum cited the emotional progress and stability Child had obtained under Grandparents' care and in fact opined that retuning Child to Father could likely cause Child to regress and lose the progress he has made with Grandparents. Specifically, Dr. Rosenblum concluded that while Child could benefit from some contact with Father, through a post-adoption agreement for example, Child needed the assurance that he would not be removed from Grandparents' care. Thus, Dr. Rosenblum recommended that the stability offered Child by Grandparents' adoption would best serve his interests. Accordingly, we conclude that the trial

court did not abuse its discretion by concluding that the termination of Father's parental rights was in Child's best interests as required under Section 2511(b).

In his last issue, Father argues that the trial court erred by terminating his parental rights instead of granting a subsidized permanent legal custodianship ("SPLC") in favor of Grandparents. Specifically, Father claims that an SPLC would better suit Child's best interests because Child's affectionate bond with Father would not have to be severed by the termination of Father's parental rights. We disagree.

Our Court has explained the circumstances under which an SPLC is appropriate:

> A trial court may consider permanent legal custody, upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental and moral welfare of the child would be best served if [an SPLC] were granted. Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety protection and physical, mental and moral welfare. … see also 42 [Pa.C.S.A.] § 6351(f.1).

In re S.H., 71 A.3d 973, 978 (Pa.Super. 2013) (citations omitted) (emphasis added).

In the instant case, as discussed herein, the trial court properly determined that termination of Father's parental rights was in Child's best interests. The trial court aptly pointed to Child's need for permanency with Grandparents, as testified to by Dr. Rosenblum, Child's therapists, and Child's

Agency caseworker, as necessitating adoption as the best option for Child. Furthermore, it is noteworthy that Grandparents have indicated that they are amenable to allowing Father, indeed Parents, to continue to have contact with Child via a post-adoption agreement. Accordingly, we discern no abuse of discretion in the trial court's decision to terminate Father's parental rights to Child and not to consider an SPLC instead. See id.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2019