J-A22035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HOWARD C. LANDIS, CO-ADMINISTRATOR OF THE ESTATE OF MORRIS STOLTZFUS, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KLING & FANNING, LLP AND LINDA KLING, ESQUIRE | |
| Appellees | No. 2086 MDA 2019 |

Appeal from the Order Entered November 27, 2019
In the Court of Common Pleas of Lancaster County
Civil Division at No: CI-16-01776

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 17, 2021**

Appellant, Howard C. Landis, as administrator of the Estate of Morris Stoltzfus (the "Estate"), appeals from the November 27, 2019 order granting summary judgment in favor of Appellees, Kling & Fanning, LLP and Linda Kling, Esquire and dismissing the complaint.  We affirm.

The trial court set forth the following facts in its Pa.R.A.P. 1925(a) opinion:

> The origin of the lawsuit *sub judice* arises out of an agreement by Morris Stoltzfus (hereinafter "Morris") and his wife Sarah to sell their family farm in Talmadge, Pennsylvania.  Morris was born on the farm, worked on the farm, bought the farm from his father, Elam Stoltzfus, and never lived anywhere but the farm for over 93 years.  Morris and Sarah had no children and there was no interest among Morris's living siblings to keep the land in the family and operate it as a farm.

Although Morris's family was not interested in the farm, his neighbors were. Harvey and Irene Oberholtzer (hereinafter "the Oberholtzers") lived on a farm two miles from Sarah and Morris, and the two neighbors began to socialize when Harvey Oberholtzer and Sarah began volunteering at the same fire company around the year 2000. In 2011, Morris first offered to rent the farm to the Oberholtzers, which the Oberholtzers declined at the time due to their friendship with Morris's tenant. Morris and Harvey Oberholtzer's talks about Morris's farm ultimately turned into an agreement to sell the farm with a total sale price of $850,000 based on a price of $10,000 an acre for eighty-five acres. When the agreement started to firm up in 2013, the sale price was lowered to $800,000 when a review of the deeds revealed that there were only eighty total acres. Around October 2013, [Appellee] Linda Kling, Morris and Sarah's attorney, called the Oberholtzers at the direction of Morris to confirm the details of the sale.

Linda Kling's attorney-client relationship had been established years prior to the transaction at issue when Morris and Sarah hired Kling to do estate planning and prepare wills and powers of attorney for them. In 2013, Morris and Sarah again retained Kling to discuss and assist with the sale of the farm to the Oberholtzers. At this first meeting, Morris informed Kling that he wanted to sell the farm to the Oberholtzers for $800,000 with a $100,000 cash payment, $700,000 payable at a 2% interest rate, and Morris and Sarah retaining a life estate in the property. Kling informed Morris that the sale price was around 50% less than the market value for the land, but Morris insisted on drafting the sales agreement on those terms. The final sale, however, was put on hold due to certain health issues Morris began to experience. Additionally, in June 2014, Sarah Stoltzfus passed away.

After Sarah died, Morris moved from the farm into a nursing home to receive more care and assistance with his daily needs. His brother, Omar Stoltzfus, served as power of attorney for Morris's health related matters. Morris's sister-in-law, Rachel Stoltzfus, served as Morris's power of attorney in the limited capacity of overseeing his financial affairs to ensure proper payment of bills. Although Rachel visited weekly and Omar held the power of attorney for Morris's health related matters, neither sought to seek a permanent guardian to oversee Morris's affairs long term.

During Morris's stay in the nursing home, he continued to talk to the Oberholtzers about the sale of the farm. On July 18, 2014, Morris and Kling met with the Oberholtzers at the nursing home to execute a sales agreement that was identical in terms and conditions to the agreement drafted in 2013. The Oberholtzers presented Kling and Morris with two checks, one for $100,000 for the down payment and the other for $12,296.50 for closing costs and miscellaneous fees. After the agreement was signed, Kling contacted Rachel Stoltzfus to arrange for payment of $2,500 for the transfer tax and so Rachel could pick up the down payment check from the Oberholtzers.

It was only after the agreement of sale was signed that [Appellant] Landis, Morris's nephew, became involved with Morris's affairs. Landis is the son of Morris's sister Lydie left [sic] the area around 1975 after attending Shippensburg University. While he came back to Lancaster County from time to time for visits, he did not maintain a close relationship with Morris. Landis was a long-time resident of New Canaan, Connecticut and later moved to Naples, Florida where he lived during these events. Landis was a CPA by profession for a private equity firm but had since retired. Landis had limited interaction with Morris and never inquired as to Morris's wants or wishes as to his farm or other property. Despite there being a power of attorney in place for Morris's healthcare and financial matters, when Landis learned of the sale of the farm to the Oberholtzers, without any discussion with Morris he retained the firm Dilworth Paxson LLP to file a Petition for Emergency Guardianship seeking to have himself named Morris's guardian. On August 20, 2014, Landis was appointed Emergency Guardian on a preliminary basis pending an evidentiary hearing. Landis claims that he received a bill of $44,996.50 in legal fees with five attorneys billing 143.65 hours for the seven-page Petition and one-hour hearing. On August 21, 2014, the day after the emergency guardianship was granted, Morris passed away.

After Morris' death, Landis requested to be and was appointed a Co-administrator of the Estate on November 7, 2014. His first order of business was to file a Declaratory Judgment action seeking to invalidate the agreement of sale for the farm between Morris and the Oberholtzers. After one brief hearing, the Oberholtzers agreed to sign over a quitclaim deed and abandon the transaction for the farm. Landis claims he received a bill for $23,610.30 in legal fees for the preparation and filing of the

Declaratory Judgment action. The farm was ultimately sold at auction for $2.4 million, beyond the sale price to the Oberholtzers and its appraised value of $1.7 million.

Landis then brough the suit *sub judice* against Kling on behalf of the Estate of Morris Stoltzfus pursuant to 20 Pa.C.S.A. § 3373 and 42 Pa.C.S.A. § 8302. Landis's Complaint sought reimbursement of his own legal fees which he alleged were caused by her negligence and breach of fiduciary duty in representing Morris in the real estate transaction with the Oberholtzers. The claim rests on the assumption that Kling knew Morris was incompetent on the day of the transaction and Landis was therefore forced to appoint himself as guardian and file actions to set aside the transaction.

Trial Court Opinion, 2/19/20, at 1-6 (pagination ours; record citations omitted).

In essence, Landis's evidence is that Morris, before he entered the nursing home, changed his mind, and chose not to sell the farm to the Oberholtzers. Landis procured evidence that Morris's health quickly declined while he was in the nursing home, and that he was obviously not competent to manage his own financial affairs. Further, according to Landis, Harvey Oberholtzer continued to visit Morris in the nursing home and pester him to sell the farm on terms highly favorable to the Oberholtzers. Landis claims Kling committed professional negligence and breached a fiduciary duty to Morris when she permitted him to sign the agreement of sale in the nursing home knowing he was not competent, and knowing that he had changed his mind about the sale when he was still of sound mind.

Kling paints Landis as an opportunist who successfully thwarted Morris's wishes to the significant financial benefit of Morris' heirs, including Landis's

mother. Kling claims that to hold her liable for professional negligence and/or breach of fiduciary duty would create for her a Hobson's choice between ignoring Morris's express wishes or facing litigation from Morris's estate, whose heirs stood to benefit from a sale of the farm at market value. Kling claims Morris was competent at the signing of the agreement, and that Landis has produced no evidence to the contrary.

The trial court concluded that Landis lacked standing under either 20 Pa.C.S.A. § 3373 and 42 Pa.C.S.A. § 8302, to pursue these claims against Kling. The trial court also concluded that Landis could not establish damages, inasmuch as the sale to the Oberholtzer's never happened, and the farm sold at auction for three times more than the Oberholtzer's would have paid. For these reasons, the trial court entered summary judgment in favor of Kling.

Landis presents four questions for our review:

1. Whether the court below erred in finding that Appellant lacks standing to bring legal malpractice and breach of fiduciary duty causes of action on behalf of the Decedent, as the Co-Administrator of the Estate of Morris Z. Stoltzfus?

2. Whether the court below erred in finding that Appellant must prove a case within a case and that no issue of fact exists as to whether Appellees exercised ordinary skill and knowledge?

3. Whether the court below erred in granting summary judgment when there were significant factual disputes in the record, failed to view the record in the light most favorable to the non-moving party, and allowed [Appellees] to rely solely on the oral testimony of [Appellee's] own witnesses in violation of the Nanty-Glo Rule?

4. Whether the court below erred in finding that there was no causal link between [Appellees'] negligence and the harm to

Appellant, and that Appellant suffered no damages, where Appellant incurred significant legal expenses as a direct result of [Appellees'] conduct.

Appellant's Brief at 3-4.

"All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa.C.S.A. § 8302. Pennsylvania also authorizes a personal representative of a deceased's estate to enforce any right or liability that survives the deceased. 20 Pa.C.S.A. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.").

Appellant alleges that Morris Stoltzfus (hereinafter the "Decedent"), were he still alive, would have legal malpractice and/or breach of fiduciary duty causes of action against Appellees. Under §§8302 and 3373, therefore, Appellant asserts he has standing to bring this lawsuit as the Decedent's personal representative. The trial court disagreed, reasoning that Appellant brought this suit for the benefit of the Decedent's heirs. The court cited **Weil v. Marquis**, 101 A. 70 (Pa. 1917), in which our Supreme Court held that while an executor or administrator, as the mere personal representative of a decedent, can take no step to set aside for the benefit of heirs, next of kin, legatees, or devisees, the fraudulent transactions of the deceased, his right to do so for the benefit of the creditors, whose trustee he is, has long been

recognized in this state." ***Id.*** at 70. The trial court found that Appellant brought this suit to benefit the Estate's heirs, including Appellant's mother. Trial Court Opinion at 7 (pagination ours). Trial court also reasoned that, in the context of estate planning, standing to bring a legal malpractice action is limited to the client and any intended third-party beneficiary, such as the named legatee of a will prepared by the defendant attorney. ***Id.*** (citing ***Guy v. Liederbach***, 459 A.2d 744, 746 (Pa. 1983).

Appellant argues ***Weil*** and ***Guy*** and similar cases are inapposite because this matter involves neither the preparation of a will nor the Decedent's attempt to defraud a creditor, and because this is a survival action. The trial court and Appellees argue ***Guy*** is representative of the limited circumstances under which a stranger to the attorney-client relationship can sue for malpractice. For purposes of this memorandum, we will assume without deciding that Appellant has standing to bring this survival action. Even so, we conclude summary judgment was proper because Appellant failed to establish compensable damages against Appellees.

Summary judgment is appropriate where there is no genuine issue of material fact as to a necessary element of the cause of action. Pa.R.C.P. No. 1035.2(1). In reviewing an order granting summary judgment, this Court must consider the record in the light most favorable to the non-moving party and resolve any conflicts against the moving party. ***Donegal Mut. Ins. Co. v. Fackler***, 835 A.2d 712, 715 (Pa. Super. 2003), ***appeal denied***, 857 A.2d

- 7 -

679 (Pa. 2004). The elements of a cause of action for legal malpractice are: "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Rutyna v. Schweers*, 177 A.3d 927, 929 n.2 (Pa. Super. 2018) (*en banc*), *quoting Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989).

There is no dispute as to the first element; Appellee was the Decedent's attorney and represented him in connection with the disputed sale of his farm. As to the second element, Appellant alleges Appellee failed to exercise ordinary skill and knowledge in permitting the Decedent to sign an agreement to sell his farm to the Oberholtzers at a price well below fair market value, at a time when he obviously was not competent to do so. This element is the subject of considerable dispute, but we do not address it here because the record reflects no damages recoverable to the Decedent in the context of a survival action for malpractice.

Our Supreme Court has held that collectability of damages in the underlying action is relevant to the analysis of a legal malpractice action. *Kituskie v Corbman*, 714 A.2d 1027, 1030 (Pa. 1998).[1] In this case,

---

[1] We are cognizant that the *Kituskie* Court held that the defendant attorney bears the burden of proving non-collectability. Appellees contested the collectability of damages in paragraphs 259 to 283 of their motion for summary judgment, and the exhibits there cited. For reasons we explain in the main text, we conclude that Appellees have met their burden.

Appellant, acting on behalf of the Estate, sought declaratory relief against Harvey Oberholtzer. Rather than dispute the Estate's right to declaratory relief, Harvey Oberholtzer executed a quit claim deed. Thus, Appellant successfully thwarted the sale of the Decedent's farm for a below-market $800,000 and sold it at auction for $2.4 million.

Apparently recognizing the lack of collectible damages stemming from a disputed agreement of sale that was never fully consummated, Appellant asserts two sources of damage in this case: $44,996.50 in fees and costs accrued to appoint Landis as temporary guardian and $23,610.30 in fees accrued in preparing a declaratory judgment action against Harvey Oberholtzer. The former is easily disposed of, as Landis conceded in his deposition that a guardianship action was necessary regardless of the disputed farm sale. Deposition of Howard Landis, 5/23/18, at 193.[2]

Regarding the latter, we observe that the declaratory judgment action against Harvey Oberholtzer was not filed as a survival action; by its express terms it was filed on behalf of the Estate for the benefit of the Estate pursuant to 42 Pa.C.S.A. § 7533 and 7535.[3] Declaratory Judgment Action, 11/11/14,

_____

[2] The deposition transcript appears in the record as Exhibit P to Appellees' motion for summary judgment.

[3] Section 7533 governs, among other things, declaratory relief available to persons interested in a written contract where there arises a question of validity as to that contract. 42 Pa.C.S.A. § 7533. Section 7535 governs declaratory relief available to persons interested in the administration of an

*(Footnote Continued Next Page)*

at ¶¶ 31-32.[4]  Moreover, the declaratory judgment action sought redress for Harvey Oberholtzer's alleged misuse of his confidential relationship with the Decedent; his alleged use of his "overpowering influence to take advantage of Decedent's weakness, dependence, and trust[,]" and his alleged "willful and malicious conduct in abusing his confidential relationship with the Decedent […]."  *Id.* at ¶¶ 21. 28.  The declaratory judgment action did not seek to vindicate any harm to the Decedent, but to the Estate:  "Consummation of [the sale of the Decedent's farm], which upon information and belief has not yet closed, would irreparably harm Decedent's Estate, particularly as the Farm is the main asset of the Estate."  *Id.* at ¶ 22.  The Estate alleged that, absent the requested declaratory relief, "the Estate will be unable to properly dispose of its main asset and distribute the proceeds to the Decedent's heirs."  *Id.* at ¶ 35.

In summary, the Estate filed an equitable action whereby it successfully persuaded Harvey Oberholtzer to execute a quit claim deed and walk away from his pending purchase of the Decedent's farm.  Nothing in the record supports the extraordinary conclusion that the fees the Estate accrued in an equitable action, filed expressly for the benefit of the Decedent's heirs and

---

estate.  42 Pa.C.S.A. § 7535.  We have no occasion to opine on the merits of Appellants' declaratory judgment action against Harvey Oberholtzer.

[4]  This document appears in the record as Exhibit P to Appellants' answer to Appellees' motion for summary judgment.

arising out of the alleged misconduct of Harvey Oberholtzer, are recoverable in this survival malpractice action on behalf of the Decedent against Appellees. Again, the Estate never claimed that the declaratory judgment action against Harvey Oberholtzer was a survival action. Rather, the Estate expressly sought to preserve an asset for distribution to the Decedent's heirs. It succeeded in spectacular fashion, eventually selling the farm at auction for $2.4 million, or triple the $800,000 for which the Decedent agreed to sell the farm to the Oberholtzers.

Because we discern no genuine issue of material fact regarding damages, we conclude the trial court correctly entered summary judgment. We therefore do not address Appellant's first three assertions of error.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/17/2021